No. 12,242.

## HOLMAN v. THE STATE.

DIRECT CONTEMPT.— *What Constitutes.*—Disorderly conduct, insulting demeanor to the court, and a direct disobedience of its orders *in facie curiæ,* constitute a direct contempt.

SAME.—*Power to Punish.*—The power to punish for direct contempts is inherent in all courts of superior jurisdiction, and can not be created, destroyed or abridged by the Legislature.

SAME.—*Legislative Power to Require Judge to make Formal Charge.*—Quære, as to whether the Legislature has power to require the judge of a court of superior jurisdiction to make any formal or written charge of a direct contempt occurring in open court and in the presence of such judge.

SAME.—*Appeal.—Statement of Judge.*—In a proceeding for a direct contempt of court, where the matter takes place in the presence of the court, and the judge places in the record a statement of the occurrence as required by statute, the appellate court will accept such statement as true.

From the Fulton Circuit Court.

*M. L. Essick* and *E. Myers,* for appellant.

*F. T. Hord,* Attorney General, and *W. B. Hord,* for the State.

ELLIOTT, J.—This appeal is prosecuted from a judgment declaring the appellant guilty of a contempt. A statement was filed by the judge charging the appellant with a direct contempt, and from that statement we take these material facts: During the trial of a cause before a jury, the appellant, as counsel, propounded a question to a witness; to this question an objection was sustained; after this ruling was announced the appellant arose to his feet and insisted upon making an argument on the question ruled upon; the court requested him to sit down, as an argument was not then in order, but, as the statement recites, the appellant " peremptorily and in the most defiant manner declared that he would not obey the request of the court, and said, ' I will stand here while it suits me to do so.' " The court again directed him to be seated; this direction was disobeyed, whereupon the

sheriff was directed to remove the appellant to another part of the court-room. The sheriff obeyed this order, and while the appellant was passing in front of the judge's bench he said to the judge, "I will get even with you." A counter statement was filed by the appellant, giving a somewhat different version of the matter, and showing that the judge, in ruling upon the objection, made an ill-tempered and undignified remark.

We do not deem it necessary to set forth in full the statement made by the appellant, for we can not yield to it as against the statement made by the judge. Where a matter takes place in the presence of the court, and the judge places in the record a statement of the occurrence, the appellate court is bound to accept as true the statement of the judge. It would lead to unseemly conflicts and greatly impair the power of a court, and much weaken the respect which counsel are bound to yield to it, to permit attorneys to contradict statements made by the judge rehearsing matters which occurred in open court. Where an act constituting a direct contempt is committed during an open session of court and in the presence of the judge, it is very doubtful whether the Legislature has power to require the judge to make any formal written charge, but we need not now decide that question—although it is proper to say, in passing, that the weight of authority is that the Legislature has no such power—for here, the judge in obedience to the statute, did make a formal statement. As that statement is confined to matters that occurred in open session, and in the presence of the judge, we must treat it as importing absolute verity.

While we are compelled to accept the statement of the judge as true, we can readily perceive, from the explanation contained in the counter statement of the appellant, that the judge was betrayed into a discourteous remark that was likely to inflame the anger of an attorney, and lead him into a line of conduct incompatible with the duty he owed to the court. It is a matter of regret that a judge should manifest bad

temper while on the bench, or treat counsel rudely, but the wrong of the judge can not excuse the misconduct of counsel. It is often necessary for a judge to be stern and determined, but it is never necessary to be ill-tempered or discourteous. Even if we should adopt appellant's theory that the judge was in the wrong, still we can not assent to the conclusion that he was not himself guilty of a contempt, for the ill-temper or harshness of the judge will not excuse a positive disobedience of the orders of the court, or a contemptuous disregard of its authority.

The power to punish for direct contempts is inherent in all courts of superior jurisdiction. This power is not conferred by legislation, but is an inherent power residing in all superior courts. It is a power that the Legislature can neither create nor destroy. It is as essential to the preservation of the existence of courts as is the natural right of self-defence to the preservation of human life. The judicial is a co-ordinate department of the government, and courts are not the mere creatures of the Legislature, for, if they were, the judicial department would be a subordinate one, dependent for existence and power upon the will of the Legislature. This it is not, as the Constitution expressly declares and the united voice of the courts affirm. As it is a co-ordinate branch of government, and as judicial power can only live in the courts, it must follow that courts possess inherent powers which they do not owe to the Legislature, and among these powers is that of the right to punish direct contempts. This subject has been many times discussed, and the doctrine often affirmed, without diversity of judicial opinion, that courts do possess the power to punish contempts independent of legislation, and that this power is one the Legislature can neither destroy nor abridge. *Little* v. *State*, 90 Ind. 338 (46 Am. R. 224); Rapalje Contempts, section 1; Criminal Contempts, 5 Crim. L. Mag. 151. We are not, therefore, to look to the statute alone to discover what constitutes a contempt.

Disorderly conduct, insulting demeanor to the court, and

a direct disobedience of it orders, *in facie curiæ*, constitute a direct contempt. These elements are here present, and we can do no otherwise than sustain the judgment of the trial court, although we may feel that there was something of hardship in the conduct of the judge. *Commonwealth* v. *Dandridge*, 2 Va. Cases, 408; *Rex* v. *Davison*, 4 B. & Ald. 329; *Thwing* v. *Dennie*, Quincy (Mass.), 338; *United States* v. *Emerson*, 4 Cranch C. C. 188; *Wilson's Case*, 7 Q. B. 984; *United States* v. *Anon.*, 21 Fed. Rep. 761.

The language used by Lord DENMAN, C. J., in *Wilson's Case, supra,* so well applies here that we quote it: " But here it appears that a contempt was supposed to have been committed. That is a case in which it becomes the unfortunate duty of a court to act as both party and judge, and to decide whether it has been treated with contempt. We can not decide upon the face of this return that they have come to a wrong conclusion. A court may be insulted by the most innocent words, uttered in a peculiar manner and tone. The words here might or might not be contemptuous, according to the manner in which they were spoken; and that is what we must look to. If the words might be contemptuously spoken, that was an ample occasion for the decision of the Royal Court, with which no other court can meddle. Every court in such a case has to form its own judgment." WILLIAMS, J., in the same case, said: " It is quite obvious that contempt may be shown either by language or manner. We can imagine language which would be perfectly proper if uttered in a temperate manner, but might be grossly improper if uttered in a different manner. No one not present can be a competent judge of this."

Judgment affirmed.

Filed March 5, 1886.