In re ULMER.

(District Court, N. D. Ohio, E. D.  May 29, 1913.)

1. CONTEMPT (§ 13*)—WHAT CONSTITUTES—PERJURY.
    Perjury committed by a witness on the stand is a criminal contempt of court.
    [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 30–35;  Dec. Dig. § 13.*]

2. CONTEMPT (§ 34*)—POWER TO PUNISH—FEDERAL COURTS.
    Power to punish for contempt is inherent in all courts of the United States on the theory that its existence is essential to preserve order in judicial proceedings and to enforce the court's judgments.
    [Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 99, 101–104;  Dec. Dig. § 34.*]

3. ATTORNEY AND CLIENT (§ 60*)—DISBARMENT OF ATTORNEY—FEDERAL COURTS.
    Disbarment of attorneys licensed to practice in the federal courts for misconduct is a matter which concerns only the court in which the proceedings are had, which court must proceed in the exercise of a sound judicial discretion, guarding equally the independence of the bar and the rights and dignity of the court itself.
    [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 83;  Dec. Dig. § 60.*]

4. ATTORNEY AND CLIENT (§ 57*)—DISBARMENT OF ATTORNEY—REVIEW.
    Neither appeal nor writ of error lies to review an order of a federal court disbarring an attorney licensed to practice before it; the only right of review being obtainable in a proceeding in the nature of mandamus, raising the question whether or not judicial discretion was exercised in the order of removal.
    [Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 81, 82;  Dec. Dig. § 57.*]

5. ATTORNEY AND CLIENT (§ 39*)—DISBARMENT OF ATTORNEY—GROUNDS.
    Under a federal court rule authorizing disbarment of attorneys for malpractice or other sufficient cause, an attorney may be disbarred for perjury committed in a federal court hearing, whether he has been convicted

---

or not, and whether the false testimony related to a material or an immaterial matter.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 52; Dec. Dig. § 39.*]

6. JUDGES (§ 49*)—DISQUALIFICATION—DISBARMENT OF ATTORNEY—PROCEEDINGS.

Where, on a rule to show cause why an attorney of a federal court should not be disbarred for perjury committed while a witness before the court, respondent's answer did not tender an issue of fact, but merely repeated the perjury in a reaffirmation of the truth of the statements given in the testimony, which had previously been determined by the court to be false, so that "rule absolute" for disbarment should be granted on the face of the record, the proceeding was not one in which the respondent was entitled to disqualify the judge under Judicial Code, § 21 (Act March 3, 1911, c. 231, 36 Stat. 1090 [U. S. Comp. St. Supp. 1911, p. 133]), authorizing the disqualification of a judge for prejudice, by the filing of an affidavit charging personal bias or prejudice against the respondent.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 187, 188; Dec. Dig. § 49.*]

Proceedings for the disbarment of Leo Ulmer. Application granted.

John J. Sullivan and William H. Boyd, both of Cleveland, Ohio, for Leo Ulmer.

U. G. Denman, Dist. Atty., of Cleveland, Ohio, opposed.

KILLITS, District Judge. The facts in this matter appear sufficiently from the rule nisi entered by the court on the 5th of April, 1913, as follows:

"Whereas, during the February, 1913, term of this court, to wit, on the 24th to the 29th days of March, 1913, inclusive, one Dan Ulmer was on trial in this court before a jury at the prosecution of the United States upon an indictment charging the said Dan Ulmer with perjury; and

"Whereas, one Leo Ulmer, a member of the bar of this court, and son of said defendant, Dan Ulmer, was present at said trial during each session of the court therein and assisted, and advised with, the counsel of said Dan Ulmer in and about the defense of said defendant, and was present at the taking of all the testimony heard upon said indictment in said trial; and,

"Whereas, said Leo Ulmer offered himself and became a witness in behalf of said defendant on said trial, being duly sworn by the clerk of this court to well and truly give testimony on the issues joined in said trial; and

"Whereas, on the 27th day of March, 1913, in said trial as such witness, and in the presence and hearing of the court, said Leo Ulmer did testify upon his oath to a matter material to the issues then on trial between the said United States and said Dan Ulmer, in substance, to wit, that he, the said Leo Ulmer, on the 13th day of February, 1908, did deposit to the credit of the said Dan Ulmer with the National City Bank, of Cleveland, Ohio, the sum of eleven hundred and fifty dollars, all in currency, namely, paper money of the United States; and

"Whereas, it appears from all the testimony presented in the trial of said case and in the hearing of said Leo Ulmer that said testimony of said Leo Ulmer was false and untrue in this, that at least the sum of ten hundred and fifty dollars of said deposit so by him made to the credit of Dan Ulmer as aforesaid was in the form of a check for that amount instead of currency or paper money of the United States; and

"Whereas, it appears from all the testimony in said trial and in the hearing of said Leo Ulmer that said Leo Ulmer knowingly so testified falsely and untruthfully with a willful and corrupt purpose; and,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Whereas, it was a material question in the trial of said cause on said indictment whether said deposit to the extent of ten hundred and fifty dollars had been in currency, paper money of the United States, or check; and

"Whereas, it is the judgment of the undersigned, judge of said court, presiding at the trial of the cause wherein the United States, upon indictment, prosecuted the said Dan Ulmer for perjury as aforesaid, and so hearing the testimony of said Leo Ulmer, as the testimony of all the other witnesses in the case, given in the presence of said Leo Ulmer as aforesaid, that the said Leo Ulmer in so falsely testifying as aforesaid did commit deliberate and willful perjury, and was thereby and because thereof, and is, in contempt of this court, and thereby and because thereof became, and is, guilty of misconduct involving moral turpitude and constituting a sufficient cause for the disbarment of said Leo Ulmer from the bar of this court:

"Now, therefore, it is ordered that unless the said Leo Ulmer, on or before the 26th day of April, 1913, at ten o'clock in the forenoon of said day, show cause why his name should not be stricken from the rolls of this court as an attorney at law, solicitor in chancery and proctor and advocate in admiralty, because of his contempt for this court so as aforesaid manifested through his aforesaid deliberate and willful perjury and because of his aforesaid misconduct in that behalf involving moral turpitude, his name shall thereupon be stricken from the rolls of this court as an attorney at law, solicitor in chancery and proctor and advocate in admiralty, and he shall be debarred from thereafter exercising either of said functions at the bar of this court.

"It is further ordered that service of a certified copy of this rule be made upon said Leo Ulmer personally by the marshal of this court, returnable on the 15th day of April, 1913.                    John M. Killits, Judge."

## On the 26th of April the respondent answered as follows:

"Your respondent, Leo Ulmer, reserving to himself the benefit of all exceptions to the uncertainty and insufficiency of the rule made herein, prays leave to object thereto as upon demurrer upon the grounds:

"First. The court had no jurisdiction to enter said rule and has no jurisdiction to try your respondent thereunder.

"Second. There are no facts stated in said rule with sufficient certainty to call upon or to require your respondent to answer thereto.

"Third. The recitals of fact contained in said rule are not sufficient cause for disbarment of your respondent, and are not sufficient in law to require your respondent to make answer thereto.

"Your respondent, being advised of the propriety of making definite and specific answer to the recitals of fact contained in said rule, makes answer thereto as follows:

"Your respondent admits that during the February term of this court, to wit, on the 24th to the 29th day of March, 1913, inclusive, one Dan Ulmer was on trial in this court before a jury at the prosecution of the United States upon an indictment charging the said Dan Ulmer with perjury, and that your respondent is and was a member of the bar of this court and a son of the said Dan Ulmer, that he was present at said trial during each session of the court and was present at the taking of all the testimony had upon said indictment in said trial, and that he became a witness in behalf of said Dan Ulmer, being duly sworn by the clerk of this court to well and truly give testimony on the issues joined in said trial, but your respondent denies that he was present at said trial or during any portion thereof in his capacity as an attorney and counselor at law, solicitor in chancery, or proctor and advocate in admiralty, and he avers that in so far as he did assist and advise with counsel for the said Dan Ulmer at said trial he did so solely on account of his relationship to his said father, Dan Ulmer, so on trial as aforesaid, and in no sense as an attorney and counselor at law, and that he was not recognized or advised with by his father's counsel in said trial as associate counsel therein.

"Your respondent futher admits that, after being duly sworn as hereinbefore admitted, he did on the 27th day of March, 1913, in said trial as such witness, and in the presence and hearing of the court, testify in substance

that on the 13th day of February, 1908, he did deposit to the credit of the said Dan Ulmer with the National City Bank of Cleveland, Ohio, the sum of $1,150, all in currency. And your respondent herein avers that his testimony so given as aforesaid upon said trial was true, and he hereby and herein reaffirms the same; but, being advised that the questions of the materiality of the said testimony in said trial is a question of law, your respondent therefore denies that the testimony so given was material to the issues then on trial as alleged in said rule.

"Further answering, your respondent avers that it is not true, as stated in said rule, that at least the sum of $1,050 of said deposit so made by him to the credit of Dan Ulmer as aforesaid was in the form of a check for that amount instead of currency or paper money of the United States, and that it is not true in testifying as aforesaid that he knowingly so testified falsely and untruthfully with a willful and corrupt purpose.

"And further answering, your respondent says that he is advised that the question as to whether or not the said deposit to the extent of $1,050 consisted of a check or currency was material in the trial of said cause is a question of law, and he therefore denies that the same is or was material to the issues in the trial of said cause.

"And further answering your respondent respectfully avers that, in so testifying in the trial of said cause as aforesaid, he testified truthfully to the best of his knowledge, recollection, and belief; that he was actuated by no corrupt motive, but only by a desire to tell the truth as a witness as he understood it; and that he in no wise committed or intended to commit contempt of this honorable court either by testifying falsely or in any other manner.

"And having fully answered, your respondent prays this honorable court to dismiss the above rule."

Owing to other engagements of the court, the matter passed over several separate days set for hearing until May 19th, when, it being assigned for that day, counsel privately expressed the desire of the respondent that the matter be passed for final determination to some other judge with an alternative intimated that otherwise the respondent would file an affidavit of prejudice under section 21 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1090 [U. S. Comp. St. Supp. 1911, p. 133]), which reads:

"Whenever a party to any action or proceeding, civil or criminal, shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against him or in favor of any opposite party to the suit, such judge shall proceed no further therein, but another judge shall be designated. * * * Every such affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term of the court, or good cause shall be shown for the failure to file it within such time. * * * No such affidavit shall be filed unless accompanied by a certificate of counsel of record that such affidavit and application are made in good faith."

Thereupon the case was again passed for a few days to give the court an opportunity to consider whether the question was one which, in his judgment, warranted a vacation of the bench to some other judge. Subsequently, notice was given to counsel for respondent that it was deemed proper for the judge, for reasons hereinafter given, not to vacate the bench, and it was advised that, if respondent's counsel deemed it necessary to protect his rights to file an affidavit under the section quoted, such course might be taken without offense. Thereafter, on May 24th, an affidavit was filed charging the court with bias against respondent.

The statements in this affidavit upon which bias and prejudice are predicated are nothing more than references to facts found by the court in the rule itself, and the affidavit could just as well have been founded upon the filing of the rule as upon remarks of the court made at the time when the court was manifestly seeking a way to relieve its bar of the presence of respondent without using the drastic method of formally finding him a perjurer as a ground for disbarment. The court assumed at this time, from an erroneous statement made by respondent himself on the records of the court as to the date of his admission to the bar, that the rules of admission had been violated in his case, and sought that as an easy way, less reflective upon respondent, to effect his removal. It was a well-meant attempt to be as easy as circumstances warranted upon respondent, and came to naught through no fault of the court. It is apparent from the spirit, if not the language, of the statute quoted, that this affidavit, filed four weeks, after the date set for the answer of the respondent, was filed out of time. If the statute applies to a matter of this character, the affidavit certainly, within the spirit of the act, should have been filed on or before April 26th. It was not even suggested to the court as a possibility in the case until May 19th, which was at least the third day to which the matter had been passed for final issue. The affidavit was stricken from the files, not however because filed out of time, but because, in the court's judgment, the statute has no application to such circumstances as were involved here.

[1] That perjury on the witness stand is contempt of court, direct and criminal as contempts are classified, there can be no room for controversy. The subject is admirably treated by Mr. Chamberlyne in his "Modern Law of Evidence," sections 249 to 255, inclusive. We quote from certain of these sections:

"Sec. 249. Of all possible acts, few are so antagonistic to the business of judicial administration as the intentional false swearing which seeks to baffle the search for truth, without which justice is impossible. Such swearing is a flagrant insult to the dignity of the court, and the same offense is committed by an attorney or other persons who procures the giving of perjured testimony."

"Sec. 253. As mentioned elsewhere, the executive powers of the court are most frequently ascertained and vindicated upon proceedings for contempt so called. The proceeding is a special one without direct connection with the matter in which it occurs. A contempt proceeding is summary, and the extent of the hearing as to questions of law rests in the discretion of the court, though one charged with contempt has the right to be heard in his defense.

"Sec. 254. Criminal contempts are those which are committed in the presence of the court and disturb its administration of justice either physically and directly, as by disorderly conduct, or morally and indirectly by bringing the administration of justice into public disgrace. Criminal contempts are all acts committed against the majesty of the law or against the court as an agency of the government, and in which, therefore, the whole people are concerned.

"Sec. 255. Direct Contempts.—The administrative power and dignity of the court necessarily involves the right of punishing summarily for offenses against justice committed in the immediate presence and hearing of the judge, or so near as to interrupt proceedings before him. These are called direct contempts. An act by any person done in the presence of the presiding judge which shows disrespect for his person or authority while acting in his offi-

cial capacity is an offense against the power and dignity of the court. The judge needs no evidence; he is himself in such cases the percipient witness; should pleadings be deemed advisable, they may be of the briefest and simplest description."

These statements of the law are not only supported by the cases cited in the text, but by the authorities generally. See article "Contempt" in 9 Cyc.

[2] The law of the United States provides a definition for direct and criminal contempt which may subject the offender to summary punishment, in section 725, which, after providing for punishment by fine or imprisonment, at their (the court's) discretion, says:

"Such power to punish contempts shall not be construed to extend to any case except the misbehavior of any person in the court's presence or so near thereto as to obstruct the administration of justice."

The federal courts hold, without qualification, that the power to punish for contempts is inherent in all the courts of the United States, its existence being essential to preserve order in judicial proceedings and the enforcement of the court's judgments, and, consequently, to the due administration of justice; that it inheres in the dignity of the court itself, and is an attribute as essential and indispensable to the due administration of justice as the person of a judge. In re Nevitt, 117 Fed. 448, 54 C. C. A. 622; Ex parte Robinson, 86 U. S. (19 Wall.) 505, 22 L. Ed. 205; Bradley v. Fisher, 80 U. S. 340 (13 Wall.) 20 L. Ed. 646. This being the necessary power of the court, with the right to summarily exercise it inherent in the fact itself, we hold that Congress cannot embarrass a court in the exercise of this duty by providing for the disability of the particular judge the dignity of whose court was affronted by the conduct under consideration, and that no attempt was made to do so by the act in question. Such construction of section 21 of the Judiciary Act would lead to manifest absurdities; it would tend to weaken the proper power of the courts to duly administer justice by requiring an individual judge who is, as Mr. Chamberlyne says, the "percipient witness" of the transaction to pass over the question whether or not the dignity of his court was affronted to some other tribunal or judicial officer of merely co-ordinate powers, who, as the Supreme Court in the case of a removal from the bar said, could not decide "with the same means of information as the court itself." We hold, then, that this statute cannot be applied to the case of a direct and criminal contempt, because of the very nature of such a matter.

[3] It has been held by the courts of the United States that disbarment is a matter which concerns only the court in which the proceedings are had. In Ex parte Secombe, 60 U. S. (19 Wall.) 13, 15 L. Ed. 565, the Chief Justice said:

"It has been well settled, by the rules and practice of common-law courts, that it rests exclusively with the court to determine who is qualified to become one of its officers, as an attorney and counselor, and for what cause he ought to be removed."

This principle has been upheld in many subsequent cases without diminution of effect; the courts simply holding that the disbarring

court must proceed in the exercise of a sound and judicial discretion, guarding equally the independence of the bar and the rights and dignity of the court itself. Ex parte Garland, 71 U. S. (4 Wall.) 333, 18 L. Ed. 366; Ex parte Bradley, 7 Wall. 373, 377, 19 L. Ed. 214; Bradley v. Fisher, 13 Wall. (80 U. S.) 335, 20 L. Ed. 646; Randall v. Brigham, 7 Wall. (74 U. S.) 523, 535, 19 L. Ed. 285; Ex parte Wall, 107 U. S. 265, 281, 285, 2 Sup. Ct. 569, 27 L. Ed. 552.

In Ex parte Burr, 9 Wheat. (22 U. S.) 529, 6 L. Ed. 152, Chief Justice Marshall, after balancing the interests of the attorney and the desirability that the respectability of the bar and its harmony with the bench should be preserved, says:

"For these objects, some controlling power, some discretion, ought to reside in the court. This discretion ought to be exercised with great moderation and judgment; but it must be exercised; and no other tribunal can decide, in a case of removal from the bar, with the same means of information as the court itself."

[4] Moreover, as a matter of practice, the Supreme Court, up to and including its last enunciation, has held that neither appeal nor error lies from an order of disbarment, but that the only right of review exists in a proceeding in the nature of mandamus raising the question whether or not judicial discretion was exercised in the order of removal. Ex parte Burr, supra; Ex parte Secombe, supra; Ex parte Bradley, supra, 7 Wall. page 376, 19 L. Ed. 214; Ex parte Robinson, second case, 19 Wall. (18 U. S.) 513, note, 22 L. Ed. 205; Ex parte Wall, 107 U. S. 565, 2 Sup. Ct. 569, 27 L. Ed. 552.

[5] The court's rule for disbarment provides that it may occur "for malpractice or other sufficient cause." That perjury, in addition to being contempt, may be ground for disbarment, ought not to require authorities, although there is no lack of them. In re Ryan, 143 N. Y. 528, 38 N. E. 963; Ex parte Walls, 64 Ind. 461; Perry v. State, 3 Greene (Iowa) 550; People v. Beattie, 137 Ill. 553, 27 N. E. 1096, 31 Am. St. Rep. 384. And disbarment for a cause involving a crime may precede conviction. Ex parte Wall, supra; Ex parte Walls, supra; Perry v. State, supra.

The court then was confronted, after the entry of the rule nisi, with the situation which, if unameliorated by any act of the respondent, permitted both punishment for contempt and disbarment for sufficient cause, and, too, under circumstances which in either case, under the authorities cited, clothed the court with summary power if the facts were as stated in the rule.

Ordinarily, such a statement as contained in the rule, made formally by the court, imports absolute verity. Holman v. State, 105 Ind. 513, 5 N. E. 556; Mahoney v. State, 33 Ind. App. 655, 72 N. E. 151, 104 Am. St. Rep. 276.

[6] We are now where we must consider the sufficiency of the so-called answer to the rule, having reference to the applicability of the statute providing for an affidavit of prejudice. If that statute applies to a disbarment proceeding, is there anything in the situation of this matter, after the filing of the so-called answer, involving even a judicial discretion remaining to be done? That there is not seems mani-

fest to us. The answer does not answer. It raises no issue of fact. It is first in the nature of objections that the rule is not specific and does not state circumstances which warrant disbarment, and those are so plainly not well taken as to require no consideration at all. The rule is specific in these particulars almost to the particularity of an indictment. The question of whether or not the subject-matter of the alleged perjury was material is not of itself of consequence in this inquiry. Perjury by an attorney as a witness upon an immaterial matter would be equally as good ground for disbarment as if his testimony were material; it would involve the same degree of moral turpitude. The rule finds the false testimony to have been material, and the language of the answer presents no justiciable issue in that question. In fact, as the whole record in the main case shows, the incident involved in the alleged perjury was a crucial fact in the government's case and defendant's testimony alluded to in the rule was the most important testimony in defense. Otherwise the answer but repeats the perjury in its reaffirmation of the truth of the statements given in testimony, determined by the court in the rule to have been false. The answer is therefore no answer; the rule is absolute on the face of the record, and the declaration of the fact, which was all remaining to be done when the affidavit was filed, was hardly more than a formal matter.

Should the answer have tendered new testimony upon the circumstances out of which the alleged perjury grew, we concede that some issue then would have been raised which, requiring a hearing, would have involved some draft of judicial discretion as to which perhaps some color of right to ask the judge to vacate the bench might appear; but, as the answer stands, the record upon which perjury by respondent is predicated is nothing more than the record in the case in which he was a witness, all the testimony in which the judge issuing the rule heard, and all of which was fully considered by him in entering it. So that, with respect to the application of section 21 of the Judiciary Act, the precise question is: Can the judge, who may summarily punish for a direct and criminal contempt involving an act which also is cause for disbarment, be removed by an affidavit purporting to be drawn under the section, in face of the fact that no defense is offered to the final establishment of a rule nisi fully setting up the circumstances? In our judgment, there can be but one answer to this question.

An order shall be entered striking the name of Leo Ulmer from the rolls of this court as an attorney and counselor at law, solicitor in chancery, and proctor and advocate in admiralty.