### State of Minnesota *vs.* Thomas J. Leftwich.

### June 10, 1889.

**Contempt—Punishment—Review of Order.**—This court may review an order punishing a person for contempt of court.

**Same—When Appeal and when Certiorari Lies.** — Where the penalty imposed is for the benefit of a party, the order may be brought here by appeal; if it is only in punishment of the offence,—in other words, is for a criminal contempt,—there can be no appeal, and *certiorari* will lie.

**Same—When Reversal will be Refused.**—An order adjudging a person guilty of a criminal contempt, and imposing a penalty, will not be reversed unless it is so apparent that no contempt has been committed as to indicate that the court used its authority capriciously, oppressively, and arbitrarily.

**Same—Disregard of Rulings in Examining Witness.**— Counsel trying a cause, while he may except to the rulings and orders of the court, is bound to respect and obey them. If, after the court has ruled against a particular course of examination of a witness, he still persists in the same course of examination, he may be guilty of a contempt.

*Certiorari,* to review an order of the district court for Hennepin county, *Hicks,* J., presiding, punishing the relator for contempt.

*Thomas J. Leftwich,* relator, *pro se.*

*Brooks & Hendrix,* for the State.

Gilfillan, C. J.. This is a *certiorari,* to bring here for review the proceedings of the district court in Hennepin county in imposing on the relator, Leftwich, a fine for contempt of court. The record certified here shows that there was on trial in the district court an action in which the relator was attorney for the plaintiff, and at the

time he was examining a witness on behalf of the plaintiff. He had asked the witness several questions, all of the same general character, each being in substance but a repetition of those preceding it. The court, on the questions being objected to as each was asked, decided them improper, and sustained the objections. The relator, however, persisted in making offers substantially similar to those made by the questions which had been overruled, and which the court probably construed to be made with intent to evade its rulings, or with some other than a *bona fide* purpose to fairly present the cause of his client. The court warned him that if he continued in that course it would consider it a contempt of court. He did continue it, and the court thereupon called on him to show cause why he should not be punished for contempt, and, as he showed none, the court adjudged him guilty of contempt, and directed to be entered against him a fine of $10.

There can be little, if any, question that an order adjudging a person guilty of contempt, and imposing a penalty upon him, may be brought here for review. The authorities which hold that at the common law the authority of every court to punish for contempts committed in its presence is final and uncontrollable, cannot apply here, where, by the constitution, the appellate jurisdiction of this court extends to all cases at law and in equity. In *County of Brown* v. *Winona & St. Peter Land Co.*, 38 Minn. 397, (37 N. W. Rep. 949,) we held this constitutional provision to mean that in all judicial proceedings the judgment which finally determines the rights of parties is subject to review by this court. But objection is made that appeal, and not *certiorari*, is the proper mode of bringing such a matter here for review. This, we think, depends on the nature and purpose of the adjudication for contempt. In *Re Fanning*, 40 Minn. 4, (41 N. W. Rep. 1076,) we held that an order committing for contempt may have a double aspect—*First*, in the nature of a remedy to a party to enforce his rights; *second*, punitive merely, in punishment of the offence of contempt; in the first for the private benefit of the party, in the second only to assert and vindicate the authority of the court, and that under that aspect its purpose is public. When of the former character it is a proceeding in the action between the parties;

when of the latter, it is collateral to it, and the parties, as such, have no interest in it; when of the former character the provisions of statute regulating appeals in civil actions may apply; when of the latter, they cannot. Upon whom, in the latter case, could the notice of appeal be served? To whom should the appeal-bond run? Certainly the one could not be served on, nor the other run to, either party to an action which might be on trial when the offence was committed or the order made, for neither party would have any interest in the matter. It is apparent that the provisions regulating appeals do not cover such a case, and where no appeal is provided *certiorari* will lie. The case is therefore properly here.

While we have jurisdiction to review an order punishing for a criminal contempt, the decison of the court making it is not to be lightly reversed. The opportunity of the court, in whose presence an alleged contempt is committed, to know and determine whether the acts or words were done or said in disregard and contempt of its authority, is vastly greater than we can have from merely reading the record of such acts or words. Acts or words, when stated in writing, may appear to have been entirely innocent, but may have been done or spoken in such a manner as to have been in the highest degree a breach of the respectful conduct due to courts when in the discharge of their duty, and of the decorum and good order that ought to be observed in their presence to enable them to properly perform their functions. For this reason we do not think we state the rule too strongly when we say that an order adjudging a criminal contempt ought not to be reversed unless it is so apparent that no contempt was committed as to indicate that the court exercised its authority capriciously, oppressively, and arbitrarily. A case might be supposed where acts or words alleged as a contempt could not under any circumstances be contemptuous, and in such a case we would probably be justified in reversing an order adjudging the party guilty.

A counsel trying the cause of his client has, of course, rights as the representative of a suitor and as an officer of the court which must be respected; but those rights can never extend to disregarding or disobeying the rulings and orders of the court. If that were

permitted the trial of a cause might become a mere farce. If he thinks a ruling against him is erroneous, he can do his duty to and save the rights of his client by taking an exception. That is the only orderly and proper way to avoid the effect of an erroneous ruling. To permit the counsel, after the court has decided that a question or a particular course of examination is improper, to persist in renewing substantially the same question, or in continuing that course, would incur the danger of the trial becoming a contest of endurance between the court endeavoring to prevent a course of examination that it deemed improper and the counsel endeavoring to follow such a course, notwithstanding the ruling of the court. A counsel who would intentionally attempt such a mode of conducting a trial, especially after being warned by the court to desist, and that it would consider persistence in it a contempt, would undoubtedly be guilty of a contempt. The court, in order to have the power to promote dispatch of business and an orderly and intelligent conduct of a trial, must have the power to summarily prevent such a thing. In this case the court appears to have considered the questions put by the relator, and the course of examination followed by him, to be an attempt to lead the witness, or, by the questions and offers, to suggest to the witness the evidence that he should give. The relator, having presented the question of his right to follow that course, and got a ruling upon it, ought, if he deemed the ruling erroneous, to have taken his exception, and afterwards conformed to the course indicated by the ruling. He had no right to attempt to evade it. As to that it is immaterial whether the ruling was or was not erroneous.

Order affirmed.