IN THE MATTER OF SELICK J. MINDES.

Argued June 11, 1915—Decided November 11, 1915.

1. It is the duty of an attorney-at-law, as an officer of the court, to maintain the respect due to courts, and judicial officers, and their rulings, and any breach of the duty is a contempt.
2. An attorney who indulges in invective or scandalous innuendo, that tends to degrade or humiliate the court, and thus impair its respectability and usefulness, may be disciplined as, for a contempt of court where the court possesses the necessary jurisdiction.
3. Neither his duty as an officer of the court nor his duty to his client requires an attorney to condemn the court's ruling and to persist in refusing to obey it.

---

On appeal from a summary conviction for contempt of court.

Before Justices PARKER, MINTURN and KALISCH.

For the appellant, *McCarter & English.*

For the defendant, *Andrew Van Blarcom.*

The opinion of the court was delivered by

MINTURN, J.   The appellant was adjudged guilty of contempt of court by Simon Hahn, Esq., judge of the First Criminal Court of Newark.   The alleged contempt occurred in the presence of the court, and the conviction of appellant is authorized by section 79, page 3991 of the compiled statutes.

There can be no doubt of the right of the court below, for the preservation of its dignity, to commit for a contempt committed in its presence.  9 *Cyc.* 5, and cases; 6 *R. C. L.* 515, and cases.

The brief of the appellant concisely states as he conceives it, the question involved, viz.: "The mooted question in this case, is as to the rights and privileges of an attorney, in the discharge of his duty to his client, in the conduct of a cause."   The duty referred to was predicated on the alleged obligation of the police court, at the time, and under the circumstances, to accept complaints against two police officers. The trial of a case was in progress when appellant made his motion, and the order of business, at least as the court conceived it, was to dispose of the case in hand before assuming other business.   At the conclusion of the case the appellant renewed his application.   The judge testified that he informed appellant that such a complaint should be presented to the prosecutor of the pleas.   The appellant, however, according to his own statement continued to argue the matter until the court "banged his gavel," and said, "that will be about all for counsel."   Instead, however, of accepting this emphatic ruling of the court as final, the appellant persisted in arguing the matter further, by continuing as he narrates it, as follows: "In every case that I have had before your honor, when down came his gavel again in the midst of my sentence.   I hesitated a moment and then said to him, 'If your honor please, I am an officer of this court, and a duly licensed attorney of this state, and as such I have certain rights and I insist on those rights; and one of those rights is to be heard in this court, in the cause in defence of my client, and if your honor refuses to give me that right, I

shall be compelled to withdraw from this case, and have other counsel substituted, and not try this case in this court again.' I then was immediately seized."

The appellant in thus describing his attitude incidentally enunciates his conception of the ethical standard which governed his conduct, which in effect was that the trial court, *nolens volens,* was under a legal obligation not only to continue hearing the appellant, after argument had been terminated, but that the court was also legally obligated to grant to the appellant the order he was seeking, and which the court on at least two occasions, during argument, had denied him. But his conception of legal duty went further, for he warned the court of the dire consequence of failing to hear him, *i. e.,* that he would be obliged to forsake his client and substitute other counsel, "and not try this case in this court again."

This threat naturally comes to us barren of the tone and demeanor of the appellant, and his environment, which doubtless served in the arena of a filled court room to emphasize, punctuate and accentuate it.

The judge of the lower court had that element of the case before him and he thus describes it: "He insisted on the court taking the complaint, and notwithstanding the fact that I had already ruled upon the question, he insisted on becoming abusive, and used loud and threatening language to the court. I rapped several times for order. He refused to keep quiet. I told him if he did not keep quiet I would be compelled to adjudge him guilty of contempt of court. Notwithstanding my warning, he continued to speak in a loud tone of voice, and stood in a very threatening and defiant attitude before me, he standing directly in front of the bench. After I had again told him to cease speaking, and that I had already ruled upon the question, he leaned over the bench, and extending his right arm with his index finger pointing directly within an inch or two of my nose, he said: 'You will listen to me, and I will make you listen, you will have to take this complaint, and I will make you take it;

you are only a committing magistrate; because a man wears brass buttons does not make him any better than any one else, and if you don't take this complaint I will see that you are impeached, and what is more, I will never come into this court again, either for a complainant or for a defendant.' And then he continued still to keep on talking, and it was then that I finally seeing that the court was in an uproar—it was almost a riot in the court room, I finally restored order, and I stated to Mr. Mindes that he had grossly offended the court, and that I did thereby adjudge him guilty of a contempt of court, and I then imposed a fine against him of $50, and ordered him committed until the fine was paid."

The witnesses pro and con differ as to the circumstantial details connected with the incident, but the important fact remains that the appellant's own story convicts him of a misconception of the duty he owed as an attorney, to his client, as well as the duty he owed to the court, of which he was an officer. There is an ethical standard of duty governing the conduct of attorneys to both client and court, which constitutes an important branch of the law of procedure, but which law schools, in their haste to matriculate, seldom, if ever, inculcate or include in their curriculum. The result of this defect is that the young attorney, particularly one who has missed the benefit of an office training, often misconceives the extent and limitations of his duty as an officer of the court, particularly in the lower courts where he is often prone to substitute *argumentum baculinum* for *argumentum ad judicium* as his conception of official duty.

The testimony in this case satisfies us upon the appellant's own story, that he quite honestly misconceived both his duty to his client, and his duty to the court, and that if he had properly conceived these duties, he would have been saved the unfortunate contretemps into which his over-zealous action led him.

His duty to the court consisted in respectfully submitting to the court's ruling, when it became manifest that the court desired to hear no further argument in the matter.

Generally speaking, it is the duty of the attorney to maintain the respect due to courts and judicial officers, and their rulings, and any breach of that duty is a contempt.

So it has been held that where an attorney indulges in invective or scandalous innuendo that tends to degrade or humiliate the court, or impair its respectability and usefulness, it is the duty of the court to take such steps as may appear to be necessary to preserve its dignity and good name, even to the expulsion of the offender from practicing before it, and he may be disciplined as for a contempt of court, where the court possesses the necessary jurisdiction. *Pittsburg, &c., Co.* v. *Muncie Co.,* 166 *Ind.* 466; 9 *Ann. Cas.* 165; *In re Pryor,* 18 *Kan.* 72, 26 *Am. Rep.* 747; 6 *R. C. L.* 493, and cases cited.

Manifestly, therefore, it was the appellant's duty to accept the ruling of the court as final, and if he desired to challenge its legal correctness to do so by an appeal, or by such other method as the law provided, in order to obtain the redress he solicited.

His duty to his client was equally obvious. It did not consist in "throwing up his brief," to use an expression of the common law lawyers, when the court failed to accept his view of the case. Nor did it consist in challenging the court to accept the view he maintained, and protesting as an alternative that he never would cross the portals of the court again. Apropos of such militant procedure, it is laid down that "there can be no doubt that every action on the part of an attorney, for the purpose of coercing a judge in the decision of a cause, whether it consists of a personal attack or of threats, or of any other means of intimidation, indicates an unquestionable unfitness for the discharge of the duties of an attorney." *People* v. *Green,* 7 *Colo.* 237; 49 *Am. Rep.* 351; *In re Austin,* 5 *Rawle (Pa.)* 191; 2 *R. C. L.* 1094, and cases cited.

It is manifest, therefore, that the duty which the attorney owes to the law, whose officer he is, and to the temple of the law wherein he officiates, must harmonize with the duty

he owes to his client of advocating his cause, and presenting the case in hand according to legal procedure, and the time honored and settled usages of the courts, which have obtained the force of law, and not in defiance of its recognized rules and well settled traditions.

In the case *sub judice,* the case of the client was not foreclosed by the decision of the trial court. Other avenues of redress were open to him, and higher courts existed to correct its legal errors. Knowledge of these facts we must assume the petitioner possessed, and that situation renders his conduct upon his own showing inexcusable.

We think, however, that the over-zealous, but unethical conduct of the petitioner did not warrant the humiliation and severity of the judgment imposed upon him, which practically was that which would be meted out to an ordinary malefactor.

The fact was lost sight of, by the trial court, that the appellant was an officer of the court, zealously, but indiscreetly and improperly laboring to perform a duty which he conceived he owed to his client. That fact should have weighed in his favor in measuring the character and enormity of his offence.

The statute authorizing this appeal (*Comp. Stat., pp.* 1736, 1737, *placita* 138, 139) requires this court to rehear the matter both upon the law and the facts, "and to give such judgment in the premises as to it shall seem to be lawful and just under all the circumstances of the case."

Our consideration of the evidence taken for this rehearing leads us to concur in the adjudication of contempt; but in view of the punishment to which the petitioner has been subjected, we think a nominal fine of $5 in lieu of the pecuniary penalty imposed upon him will be commensurate with the object to be attained, otherwise the judgment of the lower court is affirmed.