STATE ex rel. HURLEY, Relator, *v.* DISTRICT COURT ET AL., Respondents.

(No. 5,922.)

(Submitted April 2, 1926. Decided April 22, 1926.)

[246 Pac. 250.]

*Certiorari—Contempt of Court—Attorney and Client—Falsification of Court Record—What Does not Constitute—Attorney Repeating Objections After Exceptions Saved upon Warning to Desist Contemptuous.*

Contempt—Attorneys—Falsification of Court Records—What Does not Constitute.
1. An attorney for a defendant charged with crime on a second trial of the cause after disagreement of the jury on the first, asked permission to interpose a plea of once in jeopardy, stating that the jury on the former trial had been wrongfully discharged over the objection of defendant, and upon refusal of his motion to dismiss offered a typewritten copy of a minute entry of defendant's plea of once in jeopardy containing the clause that dismissal of the jury had been ordered over defendant's objection, which statement the trial judge declared to be untrue. At the conclusion of the trial the attorney was cited for contempt and found him guilty of an attempt to falsify the records of the court. *Held,* that the inclusion of the objectionable clause, even if untrue, did not constitute an attempt to falsify court records.

**Same—What Constitutes—Courts have Inherent Power to Punish.**
2. A wilful disregard of the authority of a court is a contempt the right to punish which is inherent in all courts of justice, and the fact that that power may be abused and sometimes exercised hastily or arbitrarily is not an argument to disprove either its existence or the necessity of its being lodged in them.

**Same—Attorney may Protect His Record During Trial of Cause, but must Obey Lawful Orders of Court.**
3. An attorney is entitled to protect his record during the trial of a cause so that the rights of his client may be secured, but he has no right to make that record in his own way; he must be obedient always to the lawful directions or adverse rulings of the court to which, if deemed erroneous by him, he may save his exceptions and thus save the rights of his client.

**Same—Attorney Repeating Objections Previously Saved by Exception, Contrary to Admonitions of Court, Properly Adjudged Guilty of Contempt.**
4. Since a point once saved by exception is saved for all purposes of the case, unless thereafter waived, an attorney appearing for one charged with crime, who after settlement of a bill of exceptions to the court's denial of his motion to dismiss the information for failure to bring defendant to trial within six months after filing thereof and being advised by the court that the objection based upon the motion to dismiss would go to every proceeding in the cause, thereafter against the admonition repeatedly persisted in making the motion to dismiss, he was properly adjudged guilty of contempt.

**Same—What not Defense.**
5. Disclaimer of any intention to commit contempt of court is not a defense where the contempt clearly appears from the circumstances constituting the act.

**Same—*Certiorari*—Extent of Review of Proceedings.**
6. Where the trial court in its order finding one guilty of a direct contempt recites the facts as occurring in its immediate view or presence, the supreme court cannot on *certiorari* look to the counter-statements of the accused that he had not been impertinent, discourteous or disrespectful, but must rely upon the recitals in the order of the court.

**Same—Ill Temper of Trial Judge not Excuse for Attorney's Disregard of His Authority.**
7. The ill temper or harshness of a judge during the trial of a cause will not excuse an attorney's positive disobedience of the court's orders or a contemptuous disregard of its authority.

---

[1] Contempt, 13 C. J., sec. 10, p. 9, n. 53.
[2] Attorney and Client, 6 C. J., sec. 10, p. 568, n. 22, 22 New; p. 569, n. 26, 27, 28 New; Contempt, 13 C. J., sec. 2, p. 5, n. 2; sec. 62, p. 46, n. 42; p. 47, n. 47; p. 48, n. 52; Criminal Law, 16 C. J., sec. 2049, p. 806, n. 9.
[3] Attorney and Client, 6 C. J., sec. 10, p. 569, n. 28 New; Criminal Law, 16 C. J., sec. 2049, p. 806, n. 13 New.
[4] Contempt, 13 C. J., sec. 40, p. 31, n. 55 New; Criminal Law, 16 C. J., sec. 2111, p. 836, n. 34 New.
[5] Contempt, 13 C. J., sec. 61, p. 45, n. 37, 38.
[6] Contempt, 13 C. J., sec. 167, p. 104, n. 16.
[7] Contempt, 13 C. J., sec. 56, p. 43, n. 17 New.

2. See 6 R. C. L. 493.
5. See 6 R. C. L. 534.

Original application for writ of *certiorari* by the State, on the relation of C. C. Hurley, to review an order of the District Court of the Seventh Judicial District and Frank P. Leiper, judge thereof, adjudging relator guilty of contempt. Proceeding dismissed.

*Mr. C. A. Spaulding,* for Relator, submitted a brief, and argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and Mr. A. H. Angstman, Assistant Attorney General, for Respondents, submitted a brief; *Mr. Angstman* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

*Certiorari* upon the relation of C. C. Hurley to the district court of Dawson county to review an order adjudging the relator guilty of contempt.

Mr. Hurley is, and has been for more than twenty-seven years, a member of the Montana bar, residing within what is now the seventh judicial district. For more than a year prior to March 15, 1926, he had been counsel for one Frank Turlock whose trial for the crime of perjury began on that day. As a result of what Mr. Hurley said and did during the trial, which will be recounted later, he was adjudged guilty of a direct contempt of court and fined one hundred dollars. He was granted a stay of execution upon furnishing a bond and then brought this proceeding.

The information upon which the trial was based had been filed against Turlock on March 14, 1925, and he had pleaded not guilty thereto upon that day. Trial followed in October, 1925, but the jury disagreed. On February 25, 1926, Mr. Hurley presented to the court a motion to dismiss the information for the reason that the defendant had not been brought to trial within six months after the filing thereof, trial not having been postponed upon defendant's application. Affidavits in support of the motion were filed in behalf of the

defendant and the State; arguments followed and after consideration the court overruled the motion upon March 1st. Trial followed immediately during which the objections presented by the motion were urged and overruled. The jury again disagreed. On March 3, Mr. Hurley presented a bill of exceptions in which were preserved all the papers and proceedings upon the motion to dismiss the information, including the order of the court denying the same, and this was settled by the court and filed on March 9, 1926.

The cause came on for trial again upon March 15, 1926. The court inquired of counsel for the state and the defendant whether they were ready to proceed, whereupon Mr. Hurley responded that the defendant was not ready for the reason that he had not been brought to trial within six months after the filing of the information and the trial had not been postponed upon his application and he had "made due and timely motion for the dismissal of the said action." The court overruled the motion and directed the clerk to call a jury. Mr. Hurley then said that before proceeding with the selection of a jury he desired to interpose an additional plea: that in addition to his plea of not guilty the defendant pleaded that he had been once in jeopardy for the offense charged; and counsel recited the facts attending the trial beginning March 1, concluding with the assertion that "on the 2nd day of March, 1926, the judge of the said court, without any reasonable cause, wrongfully discharged the said jury over the objection of the defendant from further consideration of the said case before the jury had arrived at a verdict"; following which counsel restated his motion to dismiss upon the ground that the trial had not been brought on within six months since the filing of the information. Then this colloquy ensued:

The Court: "So far as your motion to dismiss is concerned let the record show it is overruled. That motion may go to all of the proceedings in this case, so that it will not be necessary to renew it."

Mr. Hurley: "I ask to have this plea entered in full in the minutes of the court."

226    State ex rel. Hurley *v.* District Court.    [Mar. T. '26

[76 Mont. 222.]

The Court: "One of the troubles with your plea is that it doesn't state the facts. The jury in the former trial was not dismissed over the objection of the defendant. It was dismissed without any objection of the defendant. However, the minutes will speak the truth."

Mr. Hurley: "The defendant interposed an objection as soon as he had an opportunity to speak."

The Court: "There wasn't any objection entered whatever to the dismissal of the former jury."

Mr. Hurley: "I asked the clerk to let the minutes show——"

The Court: "The clerk is in the habit of letting the minutes speak the truth. Call a jury."

Following this Mr. Hurley gave to the clerk a typewritten copy of the plea to be incorporated in the minutes. While there is no direct evidence upon the point we conclude that the proffered typewritten matter was not incorporated therein.

After the jury was impaneled and the first witness for the state had taken the stand Mr. Hurley attempted to renew his motion to dismiss the action. The court inquired: "You want to make the same objection as before?" to which Mr. Hurley replied: "Substantially, but I prefer to make the record."

The Court: "You have settled a bill of exceptions covering this very matter?" Mr. Hurley: "Yes."

The Court: "That raises the same question?" Mr. Hurley: "Yes."

The Court: "And that the same question was raised this morning." Mr. Hurley: "Yes."

The Court: "Let the record show the objection raised in the bill of exceptions—the objection based upon the motion to dismiss—will go to every proceeding in this cause, and it is overruled."

Mr. Hurley: "All I want the record to show is that the defendant has not entered upon the trial of this case without objection."

The Court: "The court has given you such a record. The record may show that statement of the court."

At the close of the state's case Mr. Hurley moved for a directed verdict. His first ground was "that there is no legal, competent or sufficient evidence which would warrant the conviction of the defendant"; as a second ground he attempted to restate the motion to dismiss because the defendant had not been brought to trial within the six-months' period. Whereupon the court said:

"There isn't any use to repeat that," to which Mr. Hurley replied, "I prefer to make my own record."

The Court: "The second subdivision has to do with a matter that has been settled in the bill of exceptions?"

Mr. Hurley: "Yes, I wish to state it here."

The Court: "You will not be permitted to state it. The record may show that counsel desires to restate the motion to dismiss and that he is directed by the court not to do so for the reason that the record already contains the motion."

Passing to the third ground Mr. Hurley again attempted to repeat the same matter which the court had instantly told him he might not state, as will appear from the following:

Mr. Hurley: "Third, that this action is barred, and that the court has no right, jurisdiction on or authority to hear, try and determine the issues involved herein, for the reason that the amended information was filed on the 14th day of March, 1925"— — —.

At this point in the trial there seems to have been considerable confusion. The court recites in its judgment that after it had directed Mr. Hurley not to again repeat the motion to dismiss and had admonished him that the court was very reluctant to adjudge him in contempt but would be obliged to do so if he persisted in repeating it, and at the very time when the court was so admonishing him, Mr. Hurley "was then at that time dictating into the record the motion theretofore made to dismiss in the Turlock case, and the stenographer did not get a complete record of all of that which was said by the court," for the reason that, as the stenographer informed the court, he thought it was his duty to make a record of all that

Mr. Hurley said whether or not he got all that the court said. The record proceeds:

The Court: "Are you repeating that same motion?"

Mr. Hurley: "I want the record to show that I am attempting to assign my reasons."

The Court: "Proceed."

Mr. Hurley: "Will I be permitted to do so?"

The Court: "You are not permitted to repeat that motion. This court doesn't want to deny to this or any other defendant any right that he has, but, Judge Hurley, you know that that matter has been settled in a bill of exceptions."

Mr. Hurley: "But I know as well as you, and anybody else, that if a man proceeds to trial without objection, he waives that right."

The Court: "At the beginning of this trial, the court permitted you to make that objection in full, and then stated into the record, directing the court stenographer to let the record show that went to every proceeding in this case, in connection with this trial."

Mr. Hurley: "That isn't a satisfactory way to prepare a record."

The Court: "If you have any further motion, go ahead."

Mr. Hurley: "I want the record to show that I am denied the right to make the motion that I want to. Then I am satisfied."

The Court: "Does your motion pertain to the motion heretofore made?"

Mr. Hurley: "It involves the same subject matter."

The Court: "Very well, proceed."

Mr. Hurley: "—that the cause was never continued on the application of the defendant, and the defendant has heretofore—"

Here the court interrupted; after reciting the history of the case and pointing out in detail the salient facts above narrated it reminded counsel that the court had directed the court stenographer to let the motion go to every part of the proceedings

thereafter to be had in the trial of the cause, and had advised counsel that it would be unnecessary thereafter to repeat the same; that upon three occasions after the court had so admonished counsel, he had attempted to dictate into the record the same motion that was theretofore ruled upon; and then said that after being repeatedly admonished by the court to desist, and after being repeatedly advised by the court that the court had placed in the record such matter as would abundantly save any rights which the defendant might have, counsel still persisted in his course and when the court interrupted him he was attempting to dictate into the record further matter concerning the same motion. Counsel was directed, upon the conclusion of the cause, to appear before the court to show cause·why he should not be adjudged in contempt. Again, and while the instructions were being settled, counsel repeated into the record the same matter.

Pursuant to the court's order Mr. Hurley appeared in court on the next day, March 16. He made a statement in which he set forth that he had proceeded in an orderly, respectful and courteous manner to dictate the motion which he considered necessary and proper to protect the rights of the defendant, and he insisted that never during the proceedings had he been impertinent, discourteous or disrespectful; that at all times he had endeavored to proceed in an orderly manner and to show proper respect and courtesy to the court. He said that after the court had asked, "Does your motion pertain to the motion heretofore made?" and he had replied, "It involves the same subject matter," and the court said, "Very well, proceed," he understood that it was agreeable with the court for him to complete his motion. He insisted earnestly that he had not done anything in the cause which he considered it was not his right and duty to do properly to protect the rights of his client. All of the foregoing appears from the order adjudging relator in contempt.

As a part of the order it is set forth that Mr. Hurley, "in direct violation of the order of the court, in open court, during

the trial of the Turlock case, as herein set forth, deliberately, purposely, and in a contemptuous manner violated the orders of this court.'' There also appears in the order the following: ''The record may show, that, in the light of what this court had said, in the light of the specific direction which this court had repeatedly given, prior to that particular three words of the record referred to by counsel, 'Very well, proceed,' the court cannot understand how anyone could have misunderstood the direction and ruling of this court. As was repeatedly stated in this record during the trial of the Turlock case, it was the court's purpose to preserve to the defendant every right which the defendant had. Hence, the direction of this court to the stenographer immediately following the making of the motion to dismiss, that that motion should go to every part of the proceedings of this case and of this trial. An inexperienced attorney might misunderstand that, but this court fails to understand how there could be any misunderstanding with a counselor who has had very considerable more experience in practice than has this court.''

Without further reference to the proceedings it is sufficient to say that on the record as made the court adjudged Mr. Hurley in contempt and imposed the fine.

But two points will be considered in disposing of the matter, namely: (1) Did relator commit a contempt of court in offering to the clerk the typewritten plea with a request that it be incorporated in the minutes; (2) did relator commit a contempt of court in persisting in repeating, contrary to the court's order the matter relating to the motion to dismiss on the ground that the defendant had not been brought on for trial within six months after the filing of the information, the trial not having been continued upon his application?

(1) If his action in giving to the clerk a typewritten copy [1] of the defendant's plea of once in jeopardy for incorporation in the minutes amounted to an attempt to falsify the minutes of the court, relator is guilty of contempt under the provisions of subdivisions 3 and 9 of section 9908, Revised Codes of

1921: he would be guilty of misbehavior in his office of attorney and of a violation of his duty (subd. 3), and of an unlawful interference with the proceedings of the court.. (Subd. 9.) (See *State ex rel. Coleman* v. *District Court,* 51 Mont. 195, 149 Pac. 973.) The court's theory of relator's guilt rests upon the ground that the plea contained matter which was not true.

With this view we do not agree. It must be admitted that relator incorporated in the plea much useless matter, whether true or not. The plea was stated completely when it was made orally and entered upon the minutes of the court substantially in the form prescribed by the statute (sec. 11908, subd. 4, Rev. Codes 1921); the rest of the plea was surplusage, but it cannot be characterized as contemptuous merely because it was superfluous, nor because the defendant might be unable to prove it. One of the common things in the practice is the failure of the litigant to prove his allegations. The defendant might have been unable to prove that the former jury was wrongfully discharged over his objection. Let us assume the allegation was false; if so it would not bind the court simply because incorporated in its minutes. There was not any concealment in the matter. In fact, relator in making the plea asked that it be entered in the minutes and at the conclusion of the colloquy between himself and the court handed to the clerk a typewritten copy of the plea as made for insertion in the minutes. There was here no clandestine action as there was in the *Coleman Case, supra.* The court might have required relator to enter his plea of once in jeopardy in the language of the statute, refusing to permit the minutes to be cluttered with surplus matter; whether it took any such action the record does not show. Upon this ground the order adjudging relator in contempt cannot stand.

(2) The other phase of the case upon which the order rests [2] presents a delicate and difficult subject. An approach to the consideration of the question here presented must be made with a right conception of the functions of court and counsel in the administration of public justice.

The court must proceed with dignity, decorum and dispatch in the discharge of its high responsibilities. "Courts of justice are universally acknowledged to be vested by their very creation with power to impose silence, respect and decorum in their presence, and submission to their lawful mandates." (*Anderson* v. *Dunn*, 6 Wheat. (U. S.) 204, 5 L. Ed. 242 [see, also, Rose's U. S. Notes], quoted in *Ex parte Terry*, 128 U. S. 289, 32 L. Ed. 405, 9 Sup. Ct. Rep. 77.)

It is said in Ruling Case Law that the power to enforce decorum in the courts and obedience to their orders and just measures is so essentially a part of the life of the courts that it would be difficult to conceive of their usefulness and efficiency as existing without it. (6 R. C. L. 487, 488.)

A wilful disregard of the authority of the court is a contempt. (*In re McKnight*, 11 Mont. 126, 28 Am. St. Rep. 451, 27 Pac. 336; 13 C. J. 5.)

That distinguished scholar, Professor Beale, says a contempt is "any act which interferes with the operation of the court itself while engaged in the trial of cases, or which renders the court less able properly and with dignity to try cases." (21 Har. Law Rev., 162.)

In the early case of *Territory* v. *Murray*, 7 Mont. 251, 15 Pac. 145, this court recognized the doctrine that the "right to punish for contempt is inherent in all courts of justice. It is a part of their very life, and a necesary incident to the exercise of judicial power." This was reaffirmed in *State ex rel. Metcalf* v. *District Court*, 52 Mont. 46, 155 Pac. 278, where the court added: "The legislature of this state has never undertaken to abridge the powers of the courts created by the Constitution to punish any act which would constitute contempt at common law." Moreover, subdivision 1, section 9908, Revised Codes of 1921 (to say nothing of the other subdivisions) defining contempt as disorderly, contemptuous or insolent behavior toward the judge while holding the court, tending to interrupt the due course of a trial or other judicial proceeding, is but declaratory of the common law. (*State* v.

*Buddress*, 63 Wash. 26, 114 Pac. 879; 1 Words and Phrases, 2d ser. 949.)

While the power to punish for contempt is arbitrary in its nature, it is to be used only as an auxiliary means of attaining justice. (5 Cal. Jur. 888.) "The power to punish for contempt is in its nature a trust reposed in the courts, not for themselves but for the people whose laws they interpret and whose authority they exercise." (*State ex rel. Metcalf* v. *District Court, supra.*) This power may be abused, and sometimes may be exercised hastily or arbitrarily. "But this is not an argument to disprove either its existence or the necessity of its being lodged in the courts. That power cannot be denied them without inviting or causing such obstruction to the orderly and impartial administration of justice as would endanger the rights and safety of the entire community." (*Ex parte Terry, supra;* and see *Cooke* v. *United States,* 267 U. S. 517, 69 L. Ed. 767, 45 Sup. Ct. Rep. 390.)

The court as an instrumentality of the sovereignty which has established and maintains the law has, and of necessity must have, full power and authority, within the limitations prescribed by law, to control the trial and all persons taking part therein. If it were not so it would be impossible for the court to keep a trial or proceeding within due bounds, disorder rather than decorum would be the rule, and all attempts to expedite the disposition of business would be foredoomed to failure,—mere lost motion. Lawyers representing clients in court are officers of the court, charged with responsibilities but little less in character than those which rest upon the shoulders of the judge himself. In their endeavor to maintain the rights of their clients, they are entitled to exercise the widest latitude consistent with the rules of practice, the limitations of decorum, and the court's necessary control of the trial or proceeding. Being under the obligation to support with dignity the high tenets of a noble profession they are not called upon to truckle to the capricious whims of impatient judges. Nevertheless they are not permitted to defy the authority of the

court, lawfully exercised, by exhibitions of mere wilfulness or obstinacy. (*Walsh* v. *Barber*, 52 Conn. 147, 52 Am. Rep. 567.) The bounds which counsel must not transgress are pretty well understood by the profession and cannot be delimited with accuracy. Necessarily, each case must depend upon its own peculiar facts and circumstances.

It is the duty of the court to afford every opportunity for [3] the protection of litigants. The lawyer is entitled to protect his record so that the rights of his client may be secured, not only in the trial court, but in the appellate court, if the case be taken up for review. But it is a fallacious notion that the lawyer has a God-given right "to make his record in his own way." To be sure, he is not compelled, in any event, to submit to the court's idea of what the record should contain. In this respect both court and counsel must be guided by the rules of practice which, generally speaking, are well established. It may happen that an anomalous situation will arise when both court and counsel are in doubt. Such matters must be left to the sound legal discretion of the court; if in doubt the court should incline to liberality.

Learned counsel for relator aptly says that "a lawyer as an officer of the court has certain rights which cannot be denied by a supersensitive judiciary. His duty to his client, his oath of office, his inherent sense of the fitness of things, his training in self-control, his respect for the courts, all, as a fact, constrain him to an activity within rational and proper bounds. No presumption that he has violated all these constraining influences should be indulged against him; and, until it is shown that he has as a fact exceeded the zeal with which he is presumed to represent his client's interest, he should be protected." To this may be added that it will be presumed that a lawyer is acting in good faith until he dispels that presumption by his own words or acts. Very well; but he must be obedient always to the lawful directions of the court, to which he is obliged to avouch the highest respect. He must submit respectfully, and as cheerfully as he may, to the court's ad-

verse rulings.    (*In re Mindes,* 88 N. J. L. 117, 95 Atl. 743.)
The law provides a way to correct the errors of the trial court,
and that way counsel must follow if he would seek relief.

"A counsel trying the cause of his client has, of course,
rights as the representative of a suitor and as an officer of the
court which must be respected; but those rights can never ex-
tend to disregarding or disobeying the rulings and orders of
the court.    If that were permitted the trial of a cause might
become a farce.    If he thinks a ruling against him is erroneous,
he can do his duty to and save the rights of his client by taking
an exception.    That is the only and proper way to avoid the
effect of an erroneous ruling."    (*State* v. *Leftwich,* 41 Minn.
42, 42 N. W. 598.)

The eminent Judge Cooley observed: "There may be cases
in which it will become the duty of counsel to interpose be-
tween the court and the accused, and fearlessly to brave all
consequences personal to himself, where it appears to him that
in no other mode can the law be vindicated and justice done to
his client; but these cases are so rare that doubtless they will
stand out in judicial history as notable exceptions to the ready
obedience which the bar should yield to the authority of the
Court."    He then adverts to the famous scene in the trial of
the Dean of St. Asaph for libel, in which Lord Erskine in his
"notable stand for the independence of the Bar" won a lasting
fame.    (Cooley, Const. Limitations, 6th ed., 408, note.)    No
such exception appears in the instant case.    Rather we are
brought directly to a decision of the question whether a law-
yer, although the rights of his client have been protected fully,
may insist upon following his own notions, in direct disregard
of the court's forbiddance, to achieve a result already arrived
at.    There can be but one answer to the question.    It will not
[4]  do to say that relator thought it necessary to restate his
objection after it had once been made in the trial and his excep-
tion had been preserved.    This court has asserted the rule re-
peatedly that when counsel has once made his point and has
preserved his record, it is not necessary to repeat the point

thereafter, in order to have the action of the trial court thereon reviewed upon appeal. "A point once saved is saved for all purposes, unless it is thereafter waived." (*Ferrat* v. *Adamson*, 53 Mont. 172, 163 Pac. 112; *Ecclesine* v. *Great Northern Ry. Co.*, 58 Mont. 470, 194 Pac. 143; *Boyle* v. *Chicago, M. & St. Paul Ry. Co.*, 60 Mont. 453, 199 Pac. 283.) Indeed, relator recognized the rule when, undoubtedly having in mind *State* v. *Test*, 65 Mont. 134, 211 Pac. 217, he said, "All I want the record to show is that the defendant has not entered upon the trial of this case without objection."

Repetition in the trial of lawsuits should be avoided. Trial judges are to be commended rather than criticised for preventing the inclusion of repetitious and surplus matter at the trial. In the instant case, the rights of the accused with respect to the point relator was attempting to make, and which he so often repeated, had been abundantly preserved. Not only had a bill of exception been settled covering the matter, but at the beginning of the trial counsel had dictated his objections into the record three times and the court had advised him that the objection might go to every stage of the proceeding. The court was eminently justified in preventing the relator from delaying the progress of the trial by any further repetition of the matter, and when he persisted he was clearly in contempt of court. (*Hallinan* v. *Superior Court* (Cal. App.), 240 Pac. 788; *State* v. *Leftwich, supra; Williams* v. *State*, (Okl. Crim. App.), 199 Pac. 400.) In *State* v. *Leftwich, supra*, the court used the following language, pertinent here at least by analogy: "A counsel who would intentionally attempt such a mode of conducting a trial, especially after being warned by the court to desist, and that it would consider persistence in it a contempt, would undoubtedly be guilty of a contempt. The court, in order to have the power to promote dispatch of business and an orderly and intelligent conduct of a trial, must have the power to summarily prevent such a thing."

We agree with the trial court that relator could not have misunderstood the court's language when, after having repeatedly told relator that he must not again repeat that motion, the court said, "Very well, proceed." Relator was moving for a directed verdict upon several grounds, and the court was justified in assuming that there were other grounds in his mind in addition to those which he had stated.

In response to the court's order to show cause why he should [5] not be punished for contempt, relator disclaimed any intention to commit a contempt of the court, but that is no defense where the contempt clearly appears from the circumstances constituting the act. (5 Cal. Jur. 949.) If the rule were otherwise, one in contempt might always purge himself by an assertion of good intentions.

The relator also asserted, as will be remembered, that he had not been impertinent, discourteous or disrespectful to the court, at all times had endeavored to proceed in an orderly manner and to show proper respect and courtesy to the court, and had done nothing in the case which he considered it was not his right and his duty to do to properly protect the rights of his client. It is urged by counsel for relator that we must accept this statement of relator. In view of the recitations of the [6] court in the order we are not permitted to do so. Where the trial court having had under consideration the question of a direct contempt recites the facts as occurring in its immediate view or presence in the order adjudging an attorney guilty of contempt (sec. 9910, Rev. Codes 1921) the reviewing court cannot look to the counter-statement of the attorney but must rely upon the recitation of the court. (*Holman* v. *State,* 105 Ind. 513, 5 N. E. 556.)

The trial court was not disposed to accept relator's explanation as to whether he had been impertinent, discourteous or disrespectful; on the contrary it recited that the relator "deliberately, purposely, wilfully and in a contemptuous manner violated the orders of the court." The last quoted language of the court, while ineffectual if standing alone, under the rule

recognized in the cases of *In re Breen,* 34 Mont. 107, 85 Pac. 871, *In re Mettler,* 50 Mont. 299, 146 Pac. 747, and *State ex rel. Rankin* v. *District Court,* 58 Mont. 276, 191 Pac. 772, is at least as potent as relator's assertion that he had not been impertinent, discourteous or disrespectful.

We are not permitted to make inquiry into the truth of the specific facts recited in the court's order. The question here is whether, in view of the facts stated, the court exceeded its jurisdiction in adjudging the relator in contempt. A negative answer is compelled. This record is free from the infirmity of those considered in the *Breen, Mettler* and *Rankin Cases* above referred to and neither of those is authority here.

Before concluding it is proper to say that the record does [7] not indicate that Judge Leiper was other than courteous and considerate at all times. Had he been otherwise the result could not be different. In a somewhat similar case Mr. Justice Elliott, speaking for the supreme court of Indiana, said: "It is often necessary for a judge to be stern and determined, but it is never necessary to be ill tempered or discourteous. Even if we should adopt appellant's theory that the judge was in the wrong, still we cannot assent to the conclusion that he was not himself guilty of contempt, for the ill temper or harshness of the judge will not excuse a positive disobedience of the orders of the court, or a contemptuous disregard of its authority." (*Holman* v. *State, supra.*)

Mr. Hurley is a lawyer of long experience. It would seem that his zeal overran his judgment in the instant case. If he had borne in mind his duty to the court, as was said in *In re Mindes, supra,* "he would have saved the unfortunate *contretemps* into which his over-zealous action led him."

Upon the record the court had jurisdiction to adjudge the relator in contempt. It follows that the proceeding must be dismissed.

*Dismissed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN, STARK AND MATTHEWS concur.

Rehearing denied May 12, 1926.