[Crim. No. 1684. First Appellate District, Division One.—September 21, 1932.]

In the Matter of the Application of VINCENT W. HALLINAN for a Writ of Habeas Corpus.

William F. Herron, C. K. Bonestell and W. Earl Shafer for Petitioner.

Joseph A. Garry, Deputy District Attorney, for Respondent.

KNIGHT, Acting P. J.—While acting as attorney for the defendant in a criminal case the petitioner was adjudged guilty of contempt of court. He has applied for a writ of *habeas corpus*. In his return the sheriff sets forth that he holds the petitioner by virtue of a judgment and commitment reading as follows, to wit:

124

"Be it remembered, that on this 2nd day of September, 1932, in the Superior Court of the State of California, in and for the City and County of San Francisco, in Department 12 thereof, the Honorable Frank H. Dunne presiding, in the above-entitled matter, the defendants Albert Tinnin and Frank J. Egan being charged by grand jury indictment with the crime of a felony, to wit, murder, then regularly on trial, the defendant Tinnin appearing personally and through his attorney Nathan C. Coghlan, Esq., and the defendant Egan appearing personally and through his attorney Vincent Hallinan, Esq.

"That during the course of said proceedings, and during the closing arguments to the jury which were then being made by the District Attorney, on behalf of the People of the State of California, the said Vincent Hallinan, Esq., contrary to the order and direction of the Court theretofore made, interrupted and continued to interrupt the said closing arguments and presentation of the case then being made by the said District Attorney;

"And be it further remembered, that there was no necessity legal or otherwise for said interruptions by said Vincent Hallinan Esq., for the reason that pursuant to the order of said court theretofore made, and pursuant to stipulation and agreement theretofore made by the District Attorney and said Vincent Hallinan Esq., as attorney for defendant Egan, it was not necessary either to interrupt the closing arguments of said District Attorney or to enter any objections or exceptions thereto, or to any part or portion thereof, having been notified by the Court and stipulated by the District Attorney that he would be entitled to reserve and have the benefit of any and all possible exceptions that it might be lawful for him to have and make during the course of the argument, and that the defendant Egan could be deemed to have objected and excepted to any and all parts and portions of said closing arguments,

"And be it further remembered, that despite the lack of necessity therefor, and despite said order and stipulation, the said Vincent Hallinan Esq. did interrupt and did continue to interrupt the arguments of said District Attorney,

"And be it further remembered, that the manner, method and tone of voice of the said Vincent Hallinan Esq., in

refusing to cease making said interruptions were extremely and unduly loud, boisterous, harsh, offensive and contemptuous, and

"Be it further remembered, that the aforesaid conduct of said Vincent Hallinan Esq., in manner, tone and method, was disorderly, contemptuous, and that his attitude and behavior toward this Court, while the Court was holding said session, was insolent, and that the same tended to and did interrupt the due course of the trial and the said judicial proceedings which were then and there in progress, and that the said conduct of the said Vincent Hallinan Esq., was boisterous and that it did breach the peace of said judicial proceedings, and the same did create and was a violent disturbance of said judicial proceedings, and the same tended to and did interrupt the due course of the said trial and proceedings as aforesaid, which then and there was in progress.

"Now therefore, this court being fully advised of the law in the premises, finds as matters of fact that all of the above acts and conduct of the said Vincent ·Hallinan Esq. above recited took place in open court, and as a conclusion of the law therefrom, the Court finds that the same constituted a contempt of the authority of this Court.

"Wherefore, it is ordered, adjudged and decreed by this Court that by reason of the speech and conduct of the said Vincent Hallinan Esq., and the findings of fact of this Court, that he, the said Vincent Hallinan, Esq., be and he is hereby committed to the custody of the Sheriff of the City and County of San Francisco, State of California, for the period of twenty-four hours.

"Done in open Court this 2nd day of September, 1932.

"FRANK H. DUNNE,

"Judge of the Superior Court."

It will be observed that the proceeding involves a direct contempt; that is, one found to have been committed in the immediate view and presence of the court. In this regard, section 1209 of the Code of Civil Procedure declares that any of the following acts or omissions in respect to a court of justice, or proceedings therein, constitutes contempt of the authority of the court: 1. Disorderly, contemptuous, or insolent behavior toward the judge while holding court, tending to interrupt the due course of a trial or other

judicial proceeding; 2. A breach of the peace, boisterous conduct, or violent disturbance, tending to interrupt the due course of a trial or other judicial proceeding. Section 1211 of the same code provides that where a contempt is committed in the immediate view and presence of the court or judge at chambers, it may be punished summarily, for which an order must be made reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed. ■ As to the finality of judgments of contempt, it is held that the same are "subject to review only upon the point of jurisdiction" (*Otis* v. *Superior Court,* 148 Cal. 129 [82 Pac. 853]), which is but a restatement of the provisions of section 1222 of said code that "the judgment and orders of the court or judge, made in cases of contempt, are final and conclusive". Being final, a judgment of contempt is not appealable. The party aggrieved must resort to other remedies. (See 5 Cal. Jur., pp. 954, 955.) ■ When *certiorari* is invoked, the record of the entire proceeding upon which the contempt is based is brought before the reviewing court; but when as here the attack is made by way of *habeas corpus,* and the record of the proceedings is not produced, the question of jurisdiction must be determined from the judgment itself, and the petitioner is not allowed to go behind the facts and matters recited therein for the purpose of impeaching or contradicting them; they must be taken as true (*In re Shortridge,* 5 Cal. App. 371 [90 Pac. 478, 480]; *Ex parte Ewell,* 71 Cal. App. 744 [236 Pac. 205]; *Ex parte Ah Men,* 77 Cal. 198 [11 Am. St. Rep. 263, 19 Pac. 380]); and the burden is upon the petitioner to show as a matter of law that the restraint which is apparently legal is not so. (*In re Clarke,* 125 Cal. 388 [58 Pac. 22].) In our opinion petitioner in the present proceeding has failed to sustain such burden.

■ Cases have been cited by him to the effect that there can be no contempt of a void order; others to the effect that unless counsel for a defendant in a criminal action objects to the statements made by the district attorney in his argument to the jury and makes appropriate assignments of error at the time such statements are made, the defendant is precluded from urging the point on appeal

as ground for reversal; and petitioner contends, therefore, that in order to protect the interests of the defendant here it was not only his right to interrupt the argument of the district attorney for the purpose of making such objections and assignments, but that it was his duty so to do; and that the "necessity" for such interruptions was a matter for him to decide and not the trial court. Conceding all of this to be true, it is equally well settled that the right to make any such objections or assignments may be waived (16 Cor. Jur. 914); and it needs no argument to demonstrate that what may be waived as a whole may be waived in part. ■ Here no unqualified waiver is shown, but as will be noted the judgment of contempt recites that petitioner entered into a stipulation and agreement with the district attorney that at the conclusion of the arguments of the district attorney the defendant Egan would be entitled to reserve and have the benefit of any and all possible exceptions that it might be lawful for him to have and make during the course of the argument, and that the defendant Egan could be deemed to have objected and excepted to any and all parts and portions of said closing arguments. The subject of the agreement was a matter about which the parties might properly stipulate (23 Cal. Jur. 813; 36 Cyc. 1285), and it is held generally that a stipulation made in open court as this one was "constitutes not only an agreement between the parties but also between them and the court, which the latter is bound to enforce . . . " (23 Cal. Jur. 811); and even though a party after entering into a stipulation is allowed under certain circumstances to withdraw therefrom, it does not appear that petitioner ever asked permission so to do. Therefore, so far as the record before us shows, the trial court did not exceed its jurisdiction in seeking to enforce as against petitioner the stipulation theretofore made by him.

■ Regardless, however, of the legal effect of said stipulation, and assuming that after having entered into the same petitioner had the right to repudiate it and interrupt the argument of the district attorney for the purpose of objecting thereto, he was nevertheless required to do so in a respectful and orderly manner and in keeping with the common rules of decorum and propriety, which, accord-

ing to the recital of facts set forth in the judgment, he did not do. ■■ To repeat, the trial court found in this respect that the tone of petitioner's voice in refusing to cease making said interruptions which, according to the judgment, were made continually, was extremely and unduly loud, boisterous, harsh, offensive and contemptuous; and that his conduct was disorderly and contemptuous, and that his attitude and behavior toward the court while holding said session was insolent, all of which tended to and did interrupt the due course of the trial which was then and there in progress; that said conduct was boisterous and did breach the peace of said judicial proceedings and create a violent disturbance, thereby interrupting the due course of the trial. Therefore, whether or not petitioner had the right to interrupt said proceedings for the purpose mentioned, it is apparent that the manner in which he conducted himself in seeking to exercise such right brought him clearly within the operation of the provisions of said section 1209, and subjected him to punishment for contempt.

■■ Petitioner contends, however, that the matters set forth in the judgment bearing upon his behavior are merely the conclusions of the trial court which are referable only to the fact that he interrupted the argument of the district attorney in violation of the court's order; and that therefore such conclusions must be disregarded in determining the legal sufficiency of the judgment. We are unable to agree to such contention. Under all the authorities it is held that a contempt may be shown either by language or behavior, and that although the language itself may not be contemptuous, it may become so if uttered in an insolent or defiant manner; and in determining whether the language used was a contempt, regard must be had not only to the very words used but to the surrounding circumstances, the connections in which they were used, the tone, the look, the manner and the emphasis. (13 Cor. Jur. 7; 6 R. C. L. 491.) As said by Lord Denman, C. J., in *Wilson's Case,* 7 Q. B. 984: In contempt cases "it becomes the unfortunate duty of a court to act as both party and judge, and to decide whether it has been treated with contempt. We cannot decide upon the face of this return that they have come to a wrong conclusion. A court may

be insulted by the most innocent words, uttered in a peculiar manner and tone. The words here might or might not be contemptuous, according to the manner in which they were spoken: and that is what we must look to. If the words might be contemptuously spoken, that was an ample occasion for the decision of the royal court with which no other court can meddle. Every court in such a case has to form its own judgment.'' In the same case Williams, J., stated as follows: ''It is quite obvious that contempt may be shown either by language or manner. We can imagine language which might be perfectly proper, if uttered in a temperate manner, but might be grossly improper if uttered in a different manner. No one not present can be a competent judge of this.'' The Supreme Court of Indiana in *Holman* v. *State,* 105 Ind. 513 [5 N. E. 556], quoted the above statements with approval. Furthermore, according to the code commissioner's note, our section 1209 was taken originally from the Minnesota statute, and the Supreme Court of that state in the case of *State ex rel. Leftwich* v. *District Court,* 41 Minn. 42 [42 N. W. 598], in construing the statute, said, ''While we have jurisdiction to review an order punishing for a criminal contempt the decision of the court making it is not to be lightly reversed. The opportunity of the court, in whose presence an alleged contempt is committed, to know and determine whether the acts or words were done or said in disregard and contempt of its authority is vastly greater than we can have from merely reading the record of such acts or words. Acts or words, when stated in writing, may appear to have been entirely innocent, but may have been done or spoken in such a manner as to have been in the highest degree a breach of the respectful conduct due to courts when in the discharge of their duty, and of the decorum and good order that ought to be observed in their presence to enable them to properly perform their functions. For this reason we do not think we state the rule too strongly when we say that an order adjudging a criminal contempt ought not to be reversed unless it is so apparent that no contempt was committed as to indicate that the court exercised its authority capriciously, oppressively, and arbitrarily.'' In other words, as aptly stated by our own Supreme Court in *Otis* v. *Superior Court, supra,* ''Every

court is the exclusive judge of its own contempt." And in this state, even in criminal cases where the accused is charged with disturbing the peace under section 415 of the Penal Code, which declares, among other things, that every person who maliciously and wilfully disturbs the peace or quiet of any neighborhood or person "by loud or unusual noise, or by tumultuous or offensive conduct . . . is guilty of a misdemeanor", it has long since been held that a complaint charging the offense in the language of the statute is legally sufficient to sustain a judgment of conviction. (*In re Deusing,* 178 Cal. 205 [173 Pac. 930]; *Ex parte Foley,* 62 Cal. 508.) ▓▓ Therefore in the present case, it appearing from the judgment that the contempt consisted, not in the use of language which in itself was offensive, but in the contemptuous tone of voice in which it was spoken, accompanied by disorderly behavior, it is difficult to conceive, and petitioner on oral argument was unable to point out, wherein the trial court could have been more explicit in describing the volume, tone, accent and inflection of petitioner's voice and manner of speech than by saying as it did that it was extremely and unduly loud, boisterous, harsh, offensive and contemptuous; or could have better pictured his attitude and behavior toward the court than by saying that it was insolent, contemptuous, boisterous and disorderly to the extent of creating a violent disturbance and breach of the peace, all of which interrupted and interfered with the orderly progress of the trial. As was said in *Ex parte Terry,* 128 U. S. 289, 308 [32 L. Ed. 405, 9 Sup. Ct. Rep. 77, 81]: "A breach of the peace *in facie curiae* is a direct disturbance and a palpable contempt of the authority of the court. It is a case that does not admit of delay, and the court would be without dignity that did not punish it promptly and without trial."

In support of his contention on this point petitioner cites and relies mainly on the decision rendered in the case of *In re Shortridge, supra,* wherein the court said: "It is true that the order does state in general terms that his conduct was boisterous and offensive, but reading this statement in connection with the context in which it occurs, it is clear that the order means no more by this than to state a conclusion from the fact that he persisted in addressing the court against the order of the court. So the

question involves the single proposition: Does the simple fact that an attorney for a party to an action pending before the court, while a witness is being examined, persists in addressing the court, although admonished not to do so, constitute a contempt of court? We think it does not.'' But continuing, the court said: ''For aught that we can see from the order, the petitioner may have been *rightfully and respectfully* discharging his duty. . . . '' (Italics ours.) It will be seen, therefore, that the judgment of contempt in the present case contains much more than the order in the Shortridge case, because here it affirmatively appears from the judgment that petitioner was neither rightfully nor respectfully discharging his duty. But aside from the differentiating element mentioned, it would seem that the decision in the Shortridge case is contrary to the views expressed by the courts of a number of other states having similar statutes. For example, in the case of *State ex rel. Leftwich* v. *District Court, supra,* arising in Minnesota, from whence our code section 1209 was taken, the petitioner was examining a witness and had asked several questions of the same general character to which objections had been sustained. The relator proceeded in making similar offers. He was warned to discontinue. He did not do so. Thereupon a judgment in contempt was entered. Addressing itself to these facts, the Supreme Court said (41 Minn. 42, 42 N. W. 599): ''A counsel trying the cause of his client has, of course, rights as the representative of a suitor and as an officer of the court which must be respected; but those rights can never extend to disregarding or disobeying the rulings and orders of the court. If that were permitted the trial of a cause might become a mere farce. If he thinks a ruling against him is erroneous he can do his duty to and save the rights of his client by taking an exception. That is the only orderly and proper way to avoid the effect of an erroneous ruling. To permit the counsel, after the court has decided that a question or a particular course of examination is improper, to persist in renewing substantially the same question, or in continuing that course, would incur the danger of the trial becoming a contest of endurance between the court endeavoring to prevent a course of examination that it deemed improper and the counsel endeavor-

ing to follow such a course, notwithstanding the ruling of the court. A counsel who would intentionally attempt such a mode of conducting a trial, especially after being warned by the court to desist, and that it would consider persistence in it a contempt, would undoubtedly be guilty of a contempt. The court, in order to have the power to promote dispatch of business and an orderly and intelligent conduct of a trial, must have the power to summarily prevent such a thing.'' Again, in *Holman* v. *State, supra,* the facts showed that the petitioner was engaged in cross-examining a witness. The court sustained an objection. The petitioner arose to his feet and proceeded to argue the question that had been ruled upon. He was directed to take his seat. He declined to do so, and it was held that the facts sustained the judgment of contempt. Two of the numerous other cases arising under similar circumstances, wherein the judgment of contempt was sustained, are *Russell* v. *French,* 67 Iowa, 102 [24 N. W. 741], and *In re Mindes,* 88 N. J. L. 117 [95 Atl. 743].

Moreover, in our opinion the decision in the Shortridge case reached the limit of authority of a reviewing court to interfere with the power of a trial court to be ''the exclusive judge of its own contempts'', because in the absence of the statutory enactments above referred to, which are but declaratory of the common law (*Ex parte Terry, supra;* 4 Bl. Com. 286), every court of general jurisdiction has the inherent power to punish for contempt, of which it cannot be deprived even by the legislature. In this regard the Supreme Court of this state in an early case said: ''No authority has been found which denies the inherent right of a court, in the absence of a limitation placed upon it by the power which created it, to punish as a contempt an act—whether committed in or out of its presence—which tends to impede, embarrass or obstruct the court in the discharge of its duties. It is a doctrine which is admitted in all its rigor by American courts everywhere, and does not need the support of foreign authorities based upon the fiction that the majesty of the king, represented in the persons of the judges, is always present in the court. It is founded upon the principle—which is coeval with the existence of the courts, and as necessary as the right of self-protection—that it is a necessary incident

to the execution of the powers conferred upon the court, and is necessary to maintain its dignity, if not its very existence. It exists independent of statute. The legislative department may regulate the procedure and enlarge the power, but it cannot without trenching upon the constitutional powers of the court and destroying the autonomy of that system of checks and balances, which is one of the chief features of our triple-department form of government, fetter the power itself." (*In re Shortridge*, 99 Cal. 526 [37 Am. St. Rep. 78, 21 L. R. A. 755, 34 Pac. 227].) Therefore in the present case, if we should hold absolutely meaningless, as petitioner contends we should, the entire portion of the judgment dealing with his manner of speech and his behavior, we would be not only unduly extending the effect of the decision in the Shortridge case (5 Cal. App. 371 [90 Pac. 478]), but we would be doing indirectly, by a process of judicial interpretation and decision, that which the legislature may not do directly or at all, namely, nullifying the inherent power of the trial court in this particular case to punish as a contempt a breach of the peace *in facie curiae* which the trial court declared impeded, embarrassed and obstructed the court in the discharge of its duties. To so hold would be of course to exceed our own jurisdiction.

We find nothing in the cases of *In re Lake*, 65 Cal. App. 420 [224 Pac. 126], *Curran v. Superior Court*, 72 Cal. App. 258 [236 Pac. 975, 979]·, or *Platnauer v. Superior Court*, 32 Cal. App. 463 [163 Pac. 237, 242], which conflicts with the views herein expressed. The Lake case has no pertinency whatever because it did not involve the question of behavior of counsel during the progress of trial, merely his liability for punishment for contempt for inserting certain matter in an affidavit charging the judge with bias and prejudice. The Curran and Platnauer cases were reviewed on *certiorari* and consequently the records of the entire proceedings were before the reviewing court; and the decisions therein go no further than to hold that the fact that an attorney may speak in a loud, combative and contentious tone of voice, and happens to be persistent and vehement or both in the presentation of his points, does not constitute a contempt, "so long", says the court in the Platnauer case, "as his language is not offensive and

in contravention of the common rules of decorum and propriety". In this latter respect the court in the Curran case expressly points out "that the [trial] court in its order does not find that the manner in which the acts were done was disorderly, contemptuous, or insulting to the court . . . "; and in the Platnauer case the court said (p. 475) : "It does not appear from the facts as they are here disclosed that the petitioner at any time addressed the court in disrespectful language. On the contrary, he appears to have proceeded with full consciousness of the duty which an attorney owes to a court, and, when adjudged guilty of contempt, had merely interposed a suggestion in respectful language. . . . " And continuing on the court fully recognizes the fundamental principle that every court is vested with inherent power to punish for disorderly and insolent behavior, the court saying: "Every court has the right to protect its dignity by compelling litigants and attorneys appearing before it to conduct themselves with decorum and in a respectful manner and the proceedings of a trial in an orderly way. With this right necessarily attends the power to coerce decorum and decent conduct on the part of the parties and their counsel, and to compel them to demean themselves in a manner befitting the dignity of the courts of justice. And the power should on all *proper occasions* be unsparingly exercised and applied, to the end that the courts, which represent in the highest form the majesty of the law, shall be accorded that respect to which the sacredness of their functions and their high dignity entitle them."

For the reasons stated it is our conclusion that the recital of facts set forth in the judgment in the present case in its entirety is legally sufficient to support the trial court's adjudication of contempt. Therefore the writ is discharged and the petitioner is remanded to the custody of the sheriff.

Sturtevant, J., concurred.

CASHIN, J., Concurring.—I concur in the order discharging the writ and remanding petitioner. While I am satisfied that the facts found in the commitment cannot well be distinguished from those of *In re Shortridge*, 5 Cal. App. 371 [90 Pac. 478], that case in my opinion not only

reached but went beyond the limit of authority; and to the extent that it can be said to hold that a finding that the conduct and language of one addressing the court was boisterous and offensive, and interrupted the orderly conduct of the proceeding before the court, is insufficient to show contempt within the meaning of the law, it should no longer be followed.