THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* EUDALDO BÁEZ GARCÍA, Defendant and Appellant.

No. 14997. Argued February 1, 1951.—Decided February 13, 1951.

*Mario Báez García* for appellant. *Víctor Gutiérrez Franqui, Attorney General (Vicente Géigel Polanco, Former Attorney General, on the brief), J. Rivera Barreras, Fiscal of the Supreme Court, and Frank Vizcarrondo Vivas, Assistant Fiscal, for appellee.*

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

Eudaldo Báez García, an attorney, was convicted by the District Court of Puerto Rico, Mayagüez District, of contempt committed in open court and sentenced to pay a fine of $10 or in default thereof to serve ten days in jail. Dissatisfied with the judgment he appealed and contends here that the lower court erred (1) in punishing the appellant for contempt, such pronouncement not being warranted by the attorney's attitude, and (2) in having been moved by passion and prejudice in the weighing of the details of the incident and finding the appellant guilty of contempt. He further contends that the information (*sic*), as drafted, does not state facts sufficient to constitute contempt.

Appellant argues the first and second errors jointly and in like manner we shall dispose of them.

Ulises Santiago brought a claim for wages against the Heirs of Hermenegildo Méndez in the District Court of Puerto Rico, Mayagüez District. During the trial and when Mr. Eudaldo Báez García, attorney for the defendant heirs, was cross-examining the plaintiff, the following incident occurred:

"Did you say that you worked one week at $8?
"Yes, sir.
"Three at ten or one at ten?
"Two at ten.

"How many at eleven?

"The rest. Until I finished.

"How many?

"The rest.

"But how many? You must know.

"*Mr. Santana:* He is not bound to. He can just say the rest. They have agreed with me as to the time that he worked. The Supreme Court has decided in different cases, repeatedly, that in these cases the plaintiff only needs the time that he worked, the wages, and that then the rest is a simple arithmetical operation. They have accepted the working period.

"*Mr. Báez:* How many weeks were you paid $11 after having been paid two weeks at ten?

"*The Court:* Objection sustained. If he worked from a certain date until a certain date and the defendants accepted it, as they did, then, if he received $8 one week and $10 two weeks, it is easy to compute the rest by using figures.

"*Mr. Báez:* It is alleged here that he worked from October 6 until October 26.

"*The Court:* The defendants accepted that.

"*Mr. Báez:* But he mentions a different sum. We allege that he worked from October 6 to October 26. If Your Honor does an arithmetical operation you will find that we do not coincide. We are covering the allegations . . .

"*The Court:* That is not the point. The point is the objection to the question asked him.

"*Mr. Báez:* Exception, because we have caught the witness for The People in a lie and we are proving that he is telling a lie and the defendants are perfectly entitled to prove that the plaintiff is a liar in the witness stand and, pursuant to . . .

"*Mr. Santana:* I must ask the court for protection for the witness, Your Honor.

"*The Court:* The Attorney is not entitled to that.

*Mr. Báez:* We note an exception . . .

"*The Court:* Just a moment. I am speaking now. The court will not permit that a poor devil who comes here to court to claim his rights be abused and insulted. If he has any rights, the court acknowledges them; if he has no rights, the court withholds same, but he is entitled to the same protection as Mr. Doe or Mr. Roe when they take the witness stand. Just because the witness is a poor cow milker he has no less rights than any one in this court.

"*Mr. Báez:* We note an exception to the ruling of the court. We hold that in paragraph 3 of the complaint it is stated that he began to work on September 6 until October 26, both inclusive, earning a $10 weekly salary, that is, during one month and 20 days. We believe that the allegations made in the complaint are false and constitute a lie inasmuch as the witness has just now claimed from the witness stand that he worked several days, or two weeks, at the rate of $10 weekly.

"This Attorney makes it clear that he calls either a rich man or a poor man a liar and he calls any one a liar if he has to, because he has the personal courage to uphold his allegations and to suffer the consequences of his allegations when he makes them honestly and decently as he understands that he is doing today. The allegations speak for themselves . . .

"*The Court:* The incident is closed.

"*Mr. Báez:* I am taking an exception.

"*The Court:* The incident is closed. Will the attorney sit down. Marshal, make the attorney sit down. Will the attorney sit down.

"*Mr. Báez:* I sit down because Your Honor orders it, but . . .

"*The Court:* The court fines the attorney $10.

"*Mr. Báez:* Or ten days in jail.

"*The Court:* The court fines the attorney $10 or in default thereof one day in jail for each dollar left unpaid. The Marshal will see to it that this sentence is carried out immediately after the hearing of this case. The attorney will pay a fine of $10 or in default thereof ten days in jail for his disrespectful behavior in this case.

"*Mr. Báez:* We wish to take an exception.

"*The Court:* I do not wish to listen to the attorney any further. Continue the examination.

"*Mr. Báez:* I submit the case and we consider that we are unprotected.

"*The Court:* The attorney must go on with the case, because not only does he fail in his duties but sins against the profession as well.

*Mr. Báez:* We have nothing more to ask the witness.

"*Mrs. Amalia Rivera:* Your Honor, if the court will permit me, I can go on with the case.

"*Mr. Báez:* I give up.

*"The Court:* The marshal will see to it that the sentence just entered by the court is executed.

*"Mr. Báez:* I shall go with any marshal. I shall go by myself."

On account of appellant's attitude the trial had to be continued some other time.

The first document in the record of this case is entitled "Information" and reads:

"In the District Court of Puerto Rico, Mayagüez Section —United States of America, The President of the U. S., SS.— *The People of Puerto Rico* v. *Eudaldo Báez García.*—Criminal No. T–84.—CONTEMPT.—Incident of Contempt in Civil Case T–12.—WHEREAS: At the hearing of Civil Case T–12, *Ulises Santiago* v. *Heirs of Hermenegildo Méndez,* claim for wages, held on this day, and during the cross-examination of the complainant Ulises Santiago, Edualdo Báez García, Esq., attorney for the respondent, behaved himself in a disrespectful and offensive manner towards the court, displaying scorn and contempt of the court and of its orders and rulings and engaging in a disorderly, contemptuous and insolent conduct towards the court, failing to obey its rules and regulations and insulting the complainant by word of mouth; WHEREAS: The court considered that such conduct of the attorney constituted contempt and ordered him to pay a $10 fine or in default thereof to serve 10 days in jail; WHEREFORE: The court rules and orders that this order be enforced in accordance with the terms of *this* judgment pursuant to law. *The clerk will issue the corresponding warrant to the Marshal for execution.*—Given in Mayagüez, Puerto Rico, this 24th day of July, 1950.—(Sgd. Angel Fiol Negrón, Angel Fiol Negrón, District Judge." (Italics ours.)

Appellant contends that there is not a thing in the incident above quoted tending to show that he was guilty of contempt in open court as said offense is defined in subdivision 1 of § 1 of the Act Defining the Offense of Contempt, as amended by Act No. 102 of May 12, 1937 (Sess. Laws, p. 241) to the effect that the "disorderly, contemptuous or insolent conduct towards a court or a justice thereof, or the

Industrial Commission of Puerto Rico constituted by all or some of its members, in its presence or during its session and tending to interrupt its proceedings, or in the presence of a jury, while it is actually sitting or deliberating in any case," among other. acts, shall constitute contempt of court. He claims that none of the words he spoke nor his personal attitude towards the court can be interpreted as constituting disorderly, contemptuous, or insolent conduct towards the court or trial judge; that his words branding plaintiff Ulises Santiago a liar do not constitute contempt according to the decision in *Coll* v. *Leake, District Judge,* 17 P.R.R. 823 and, finally, that at no time did he disobey the order of the court asking him to sit down.

The task of an appellate court in cases of this nature is often arduous and difficult and is always unpleasant when it arises in connection with the conduct of a member of the bar. And it is because in deciding the case this Court is not in the same position as the court *a quo* in order to determine the true scope of the words and phrases spoken, inasmuch as we are unable to learn the tone of voice in which they were spoken or the attitude and gestures which might have accompanied them. As said in *Fisher* v. *Pace,* 336 U. S. 155, 161:

". . . In a case of this type the transcript of the record cannot convey to us the complete picture of the courtroom scene. It does not depict such elements of misbehavior as expression, manner of speaking, bearing, and attitude of the petitioner. Reliance must be placed upon the fairness and objectivity of the presiding judge. The occurrence must be viewed as a unit in order to appraise properly the misconduct, and the relationship of the petitioner as an officer of the court must not be lost sight of."

In *Ex parte Lastra,* 56 P.R.R. 534, 553, we had the opportunity to quote, with approval, similar concepts set forth in *In re Hallinan,* 14 P. 2d 797, 799, to the effect that "The opportunity of the court, in whose presence an alleged con-

tempt is committed, to know and determine whether the acts or words were done or said in disregard and contempt of its authority is vastly greater than we can have from merely reading the record of such acts or words. Acts or words, when stated in writing, may appear to have been entirely innocent, but may have been done or spoken in such a manner as to have been in the highest degree a breach of the respectful conduct due to courts when in the discharge of their duty, and of the decorum and good order that ought to be observed in their presence to enable them to properly perform their functions. For this reason we do not think we state the rule too strongly when we say that an order adjudging a criminal contempt ought not to be reversed unless it is so apparent that no contempt was committed as to indicate that the court exercised its authority capriciously, oppressively and arbitrarily."

■■ In the case at bar we can not agree with the appellant that the record fails to show that he committed contempt. It is true that in *Coll* v. *Leake, supra,* we held that the statements of an attorney during the argument before the court to the effect that he did not believe the statements of certain witnesses, even under oath, did not constitute contempt for the attorney may attack the credibility of the witnesses. Here the situation is different. The appellant called the witness a liar while the witness was testifying and entitled to be protected by the court, as in fact he was protected, under the provisions of § 527 of the Code of Civil Procedure, 1933 ed. (Section 165, Law of Evidence) which insofar as pertinent provides that "It is the right of a witness to be protected from irrelevant, improper, or insulting questions, and from harsh or insulting demeanor . . ." It was after the court intervened that the appellant, under the pretext of noting an exception, insisted in his previous statements, enlarging them in such a manner that the attitude and tone of voice in which they were spoken may be easily inferred from their context. Notwithstanding that the court

merely told the attorney: "The incident is closed," the attorney insisted that he was noting an exception [1] and it was then that the court said: "The incident is closed. Will the attorney sit down. Marshal, make the attorney sit down. Will the attorney sit down." These phrases used by the court tend to show that the appellant, despite the indication of the court, did not sit down, and that even though finally he was apparently willing to do so, he replied: "I sit down because Your Honor orders it, but . . ." This defiant attitude coupled with his former statements was what the court considered as constituting contempt and fined the appellant $10. Even then the latter replies to the court: "Or ten days in jail." The disrespectful conduct of the attorney is self-evident throughout this deplorable incident and the lower court did not err in considering him guilty of contempt committed in open court. *Ex parte Lastra*, *supra*, and cases therein cited. There is nothing in the record tending to support appellant's allegation to the effect that the court acted under the influence of passion and prejudice. The first two errors assigned were not committed.

 By the third assignment appellant contends that the warrant of imprisonment issued is not signed by the Judge delivering sentence, as required by § 3 of the Contempt Act, which insofar as pertinent provides:

". . . whenever a person is fined or committed to jail for a contempt of court or of the Industrial Commission, an order or warrant for such fine or imprisonment must be signed by the judge or commissioner delivering such sentence, setting forth the act or acts constituting such contempt, with the time and place of the commission thereof, and the circumstances, and specifying the sentence of the court; otherwise such sentence will be wholly invalid and inoperative."

We have copied above the mislabeled "Information" which appears in the record and in which the lower court, after

---

[1] He had already done so previously, even though pursuant to Rule 46 of the Rules of Civil Procedure formal exceptions to rulings or orders of the court are unnecessary.

setting forth the things done by the appellant which it considered as constituting such contempt, the time and place of the commission thereof and the sentence imposed, provided as follows: "WHEREFORE: The court rules and orders that this order be enforced in accordance with the terms of *this* judgment pursuant to law. *The clerk will issue the corresponding warrant to the Marshal for execution.*" (Italics ours.)

This order directs that the judgment be enforced pursuant to law, the clerk issuing the corresponding warrant to the marshal. In fact, the record discloses a warrant of imprisonment signed only by the clerk and addressed to the Warden of the District Jail of Mayagüez to admit the appellant to said jail in order to serve the sentence in default of the payment of the fine. There is another document, also signed by the clerk only, ordering the marshal to "comply with the order of the Honorable Judge executing the proper warrant in connection with the terms of the sentence and sending back to the office of this clerk the return duly executed." Thus, it was the clerk who issued the warrant in this case complying with the very order of the court.

We have held that the sentence and the warrant referred to in § 3, *supra*, are two different documents, *De Torres* v. *District Court*, 58 P.R.R. 519, 529, and that a warrant issued by the clerk and not by the trial judge is an unauthorized and void act. *Ex parte Germán*, 64 P.R.R. 378, 381. In this latter case, however, we decided that "inasmuch as the statute does not fix any time limit for the issuance of a writ or order of commitment, the trial court can and should enforce its aforesaid judgments by issuing the proper writ or order in accordance with the provisions of the statute."

Therefore, the judgment will be set aside until the trial court enters an order or warrant of imprisonment pursuant to statutory provisions and to that effect the case is remanded for further proceedings.